Argued November 16, 1977, affirmed May 30, reconsideration denied July 12, review denied September 19, 1978

STATE OF OREGON, *Respondent,*

*v.*

JOHN KENNEDY RAGSDALE, *Appellant.*

(No. 32138, CA 8528)

579 P2d 286

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Joseph, Judges.

LEE, J.

## LEE, J.

Defendant appeals his conviction of carrying a dangerous weapon with intent to use it in violation of ORS 166.220.[1] The issue is whether the trial court erred in denying defendant's motion to suppress all evidence derived from a motor vehicle stop. Defendant contends that the subsequent search of his residence was unlawful because the search warrant was issued on the basis of an affidavit which contained information acquired in an illegal stop and search of his vehicle.

The evidence shows that officer McCloud received police radio information at 1:16 a.m. that a shot had been fired into a house on Mount Richmond Road, near Gaston, Oregon. The house was occupied at that time. The radio communication indicated that a small and possibly dark vehicle was involved and that it had proceeded away from the scene toward nearby Cherry Grove. Mount Richmond Road extends in a generally easterly direction from the scene of the shooting to an intersection with Patton Valley Road where one may go south toward Cherry Grove or north toward Scoggins Dam. There are few other roads in that general area.

When McCloud received the radio report he was "not very close" to the scene so it required some driving time to arrive at a point "five [or] six" miles from the scene of the shooting. Sixteen minutes after the radio report, while he was driving south on Patton Valley Road, toward the scene, he met a small vehicle traveling north toward Scoggins Dam. McCloud felt that the automobile he met might be the suspect vehicle so he turned around to follow it. McCloud estimated that the "turn around" required ten seconds. Upon attempting to overtake the vehicle, he noticed

---

[1] ORS 166.220 provides in pertinent part:

"Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a * * * firearm * * * commits a Class C felony."

[ 551 ]

that it "speeded up" and he had difficulty overtaking it. After a three minute pursuit, McCloud stopped the vehicle at 1:35 a.m.

The vehicle stopped was a white Chevrolet Nova. McCloud informed the occupants, defendant and Fredericks, of the shooting incident, surveyed the passenger area with his flashlight, and asked defendant if there were any weapons in the car. When defendant said no, McCloud indicated that he wished to look in the trunk.

As McCloud and defendant approached the trunk, defendant told McCloud that Fredericks' rifle was in the trunk. When defendant opened the trunk, the officer saw a 7.35 mm converted military rifle. The gun's action was open, it was unloaded, and McCloud concluded from smelling the barrel that it probably had not been fired recently. The stop lasted 15 minutes, after which defendant was released.

Three 30.06 shell casings, one loaded 30.06 cartridge, and two 7.35 mm shell casings were found near the scene of the shooting and two bullet fragments were found in the house. Discovery of the cartridge and shell casings led to further investigation of defendant and his acquaintances.

In preparing an affidavit to establish probable cause to search defendant's house, the police made reference to McCloud's discovery of a 7.35 mm rifle in the trunk of defendant's car. The affidavit also recited that defendant's sister was aware that defendant owned a 30.06 rifle, that Deputy Oviatt had recovered Fredericks' 7.35 mm rifle from one Buzzini with ammunition in it, and that Buzzini said Fredericks had given it to him for safekeeping because Fredericks "had been target practicing and might have shot a house." The affidavit stated further that on December 17, 1975, Deputy Elle took the 7.35 mm rifle and the 7.35 mm shell casings found in the vicinity of the house to the Oregon State Police Crime Laboratory for

analysis, which had indicated that Fredericks' 7.35 mm rifle fired the shells that produced the 7.35 mm shell casings found near the house. The affidavit concluded that the above information constituted probable cause to search for a 30.06 rifle, 30.06 ammunition or empty shell casings or a 30.06 ammunition box at defendant's residence. During the subsequent search of defendant's home, officers found one box of 30.06 shell casings and a container with four empty casings.

■ Defendant contends, inter alia, that McCloud did not have grounds for a reasonable suspicion as a basis for stopping his car. An officer may stop and interrogate a person if he "reasonably suspects" that the person has committed a crime. ORS 131.615.[2] That term is defined in ORS 131.605(4) as follows:

> "(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

ORS 131.605(4) was part of section 30 of the Proposed Oregon Criminal Procedure Code of 1972, compiled by the Criminal Law Revision Commission (Commission), which was enacted by the legislature in 1973. The commentary relevant to this particular section is found at page 25 of the Commission's report and in pertinent part is as follows:

> " 'Reasonably suspects' is defined initially to show that the suspicious belief must be based on a totality of the circumstances. This requirement was stated in similar terms in [*Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968)]. There must be some facts or circumstances that distinguish the conduct of the individual

---

[2]ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

stopped from that of other individuals who are not stopped:

" 'In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion * * *.' 392 US at 21."

The circumstances and articulated facts are viewed objectively in order to determine whether the officer had reasonable suspicion justifying him to stop the individual for investigation. *State v. Bartosz,* 34 Or App 123, 127, 578 P2d 426 (1978).

■ In the instant case, McCloud became aware that criminal activity was afoot when he received a radio report that a shot had been fired into a house. At the suppression hearing McCloud testified that he felt that there was a "very good possibility" that defendant's vehicle was involved in that criminal activity because there are few roads by which a person could leave the area and it was rare to see a car in that area at that time of the night. McCloud also knew that the suspect car was small, that it was headed away from the scene of the shooting, and that it "sped up" when he undertook to overtake it. We do not believe it is determinative that the car was white rather than dark. *See State v. Cloman,* 254 Or 1, 9, 456 P2d 67 (1969). The possibility of error in observation, particularly at night, is always a factor but that factor is outweighed here by the other factors enumerated. We agree with the trial court that the stop was authorized.

■ Defendant contends further that he did not voluntarily open the trunk of his car for the officer. The question of whether consent to search is voluntarily given is a question of fact determined by the totality of the attendant circumstances. *Schneckloth v. Bustamonte,* 412 US 218, 227, 93 S Ct 2041, 36 L Ed 2d 854 (1973): *see also State v. Flores,* 280 Or 273, 278, 570 P2d 965 (1977). Defendant stated that the officer said, "[L]et's get out and check the trunk." Defendant's companion, Fredericks, quoted the officer as saying,

"Let's have a look in the trunk." McCloud testified that he said something like, "[D]o you mind if I look in your trunk," and that defendant then opened the trunk with a key. The trial court made a finding that "[t]he officer's inquiry was reasonable and the search of the defendant's car thereafter was conducted pursuant to the free and voluntary consent of the defendant." There is evidence to support that finding so it is binding on us. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

Affirmed.