Argued and submitted October 12, 1981, affirmed April 26, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# DICKEY ANTHONY RICHARDS,
*Appellant.*

(No. C 80-10-33475, CA A20444)

643 P2d 1348

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Frank W. Ostrander, Assistant Attorney General, Salem, filed the brief for respondent.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals from his convictions for burglary in the first degree, theft in the first degree, rape in the first degree, two counts of sodomy in the first degree and sexual abuse in the first degree. He assigns as error the trial court's denial of his motion to suppress evidence that he contends was obtained as the result of an illegal stop.[1]

Evidence at the suppression hearing revealed that, on October 5, 1980, at 6:04 a.m., Officer Barkley received a radio broadcast that a rape had occurred approximately 15 minutes earlier at the Midtown Motel in northeast Portland. The broadcast included a description of a suspect as a black male, 5 foot 9 inches, 150 pounds, with an Afro and a mustache, wearing dark clothing and a stocking cap and armed with a revolver.

The officer first checked out the immediate vicinity and then began looking in nearby restaurants that were open at that time of morning. He went to Benson High School, then to a Denny's restaurant, where there were a number of black patrons, but no one matching the broadcast description. He proceeded to a Sambo's restaurant about one mile from the motel where, at approximately 6:38 a.m., he saw defendant. Defendant matched the broadcast description, except that he had a small beard and was not wearing a stocking cap.

The officer ascertained from two restaurant employees that defendant had entered the restaurant 15 to 20 minutes earlier. He then asked defendant to step outside to talk. Defendant refused at first, but finally consented. As he stood, the officer noticed a bulge in his pocket. Defendant made a quick turn, and the officer grabbed the bulge, felt it was a gun, and drew his revolver. Defendant was placed under arrest; a starter pistol, a stocking cap and $340 were found in his pockets.

Defendant contends that the stop was improper because there was no basis for the officer reasonably to suspect him of committing the rape. If the stop was proper,

---

[1] Defendant's motion to suppress contained three issues: (1) the legality of the stop; (2) the validity of the victim's identification; and (3) violations of defendant's *Miranda* rights. Only the stop issue was raised on appeal.

the trial court was correct in denying the motion to suppress. Only the stop itself is challenged.

An officer may stop and interrogate a person if he "reasonably suspects" that the person has committed a crime. ORS 131.615.[2] ORS 131.605(4) defines "reasonably suspects":

" * * * that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

In determining whether the stop was justified, we look to see whether the facts perceived by the officer constituted objective cause for the stop. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977); *State v. Ponce,* 43 Or App 665, 668, 603 P2d 1243 (1979). In this case the officer knew that a serious crime had just been committed. In *State v. Denny,* 27 Or App 455, 458, 556 P2d 719, *rev den* 277 Or 237 (1977), we said:

" * * * Where, however, the police know that a crime of serious gravity has just been committed and that quick tactical reaction is necessary to apprehend the offender, then factors which would be of marginal significance in a general investigation take on heightened importance. * * * "

The question becomes whether there is a *reasonable possibility* that the person observed is connected with the crime the police know has been committed.

In *State v. Canape,* 46 Or App 453, 611 P2d 1190 (1980), we upheld the stop of a person who met the description of a burglary suspect and was seen in the evening about 14 blocks from an area of a series of burglaries that had occurred within the preceding two or three weeks. The suspect's description, at least two weeks old,

---

[2] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

gave his height, hair color and age, that he wore a beard and mustache and was neatly dressed. We concluded that the officers could reasonably suspect that the defendant had committed the burglaries.

We find the basis for reasonable suspicion in this case is at least as strong as in *Canape*. While the description in that case included the suspect's age, the police were not, as here, investigating a crime which had just been committed, nor were they looking for a suspect at a time of day when few people were out in public. We have often upheld a stop when the defendant matched general descriptions of suspects and there were few people in the area. *See e.g. State v. Denny, supra; State v. Ragsdale,* 34 Or App 549, 554, 579 P2d 286, *rev den* 283 Or 503 (1978).

■ As to the discrepancies between defendant and the broadcast description, in *State v. Ragsdale, supra,* 34 Or App at 554, we upheld the stop of a small white car when a small dark car had been reported to the police. We held that this discrepancy was not determinative. *See also State v. Cloman,* 254 Or 1, 10, 456 P2d 67 (1969); *State v. Armstrong,* 52 Or App 161, 166-67, 628 P2d 1206, *rev den* 291 Or 662 (1981). Here, neither defendant's beard nor the absence of the stocking cap is significant, given his closeness to the suspect's description in all other respects and his proximity in time and place to the crime.

■ Defendant was located within a mile of the crime site, in one of the few public places open at that time of day where the suspect could have gone to blend in with other people. He substantially matched the description of the suspect, and the time of his arrival at the restaurant was compatible with the possibility that he had committed the rape. We find that the officer could reasonably have suspected that defendant had committed the rape. *See State v. Armstrong, supra; State v. Ragsdale, supra; State v. Denny's, supra.* Therefore, the evidence obtained as a result of the stop was admissible at trial.

Affirmed.