Argued and submitted September 30, 1999, reversed and remanded April 12,
respondent's petition for reconsideration filed April 26 allowed by opinion
June 28, 2000
See 168 Or App 552 (2000)

# STATE OF OREGON,
*Appellant,*

*v.*

# VICTORIA LYNN RICKS,
*Respondent.*

## (97C21383; CA A103293)

998 P2d 234

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Peter Gartlan, Chief Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## EDMONDS, P. J.

The state seeks reversal of a pretrial order granting defendant's motion to exclude evidence acquired as a result of a motor vehicle stop. ORS 138.060(3). The state contends that the trial court erred in holding that the police officer did not have an objectively reasonable suspicion at the time of the stop to believe that the car he stopped was stolen. ORS 131.615(1). We review for errors of law, ORS 138.220, and reverse.

The facts are not in dispute and are taken from the testimony of Officer Hicks at the suppression hearing. While on patrol at approximately 3:00 a.m., Hicks saw defendant drive a new model Toyota Corolla into the parking lot of a motel in northeast Salem. She had a female passenger with her. As he watched, defendant and her passenger parked in the "very far south parking lot of the [motel], and then walk[ed] behind the complex, the buildings, and went to a room in the center of the complex[.]" He noticed that defendant had not parked in available space much closer to the room that they had entered. Hicks is a 15-year police veteran. He testified that officers had frequently been called to that particular motel for a variety of offenses and that he personally had been involved in the recovery of stolen vehicles at that location. Hicks testified that based on his experience, he "was suspicious of the fact that the vehicle was being separated from the room[.]"

Hicks then requested a motor vehicle license check on the Toyota. That check indicated that the vehicle was registered to an individual residing at a southeast Salem address. Hicks called the telephone number listed for the registered owner and left a voice mail message after receiving no answer. He then continued to patrol his assigned area. At approximately 4:00 a.m., a dispatcher notified Hicks that an individual with the same name as the owner of the Toyota had called and reported a prowler. Upon calling the telephone number given by the caller, Hicks ascertained that the caller was the son of the registered owner of the Toyota. The son lived at a different address. Hicks explained why he was calling and engaged in the following discussion:

"I asked him if there was any reason that the car or his father, being registered and living in Salem, that car should be at the [motel.] He said there was no reason to his knowledge. I asked him again if he knew if his father would loan that car to anybody that would have permission to drive it. He told me that no, to his knowledge nobody would drive."

The son said that he thought his father was at home, but that if he was not, he might be at his girlfriend's residence. The son did not know the girlfriend's telephone number. After Hicks described defendant, the son told him that defendant did not match the description of his father's girlfriend.

At that point, around 4:23 a.m., Hicks headed back to the motel, arriving just as defendant drove out of the motel parking lot in the Toyota. Hicks testified:

"I then told [the son] that I was back at the motel and the car was now leaving and the same person, a black female, was driving the car. I asked him if he knew a black female that his father associated with or that would have permission to drive the car. Again he told me that he knew of no one like that."

Hicks then initiated a traffic stop, believing the Toyota was a stolen car.

■ "ORS 131.615(1) permits an officer to stop a person temporarily so that a reasonable inquiry may be made of the person who the officer 'reasonably suspects' has committed a crime." *State v. Belt*, 325 Or 6, 10, 932 P2d 1177 (1997).

As defined in ORS 131.605(4) (1995), the phrase, "reasonably suspects" requires that the officer subjectively believe that the person stopped has committed a crime and that that belief be objectively reasonable. *Id.* at 11. Hicks testified that he believed that the Toyota had been stolen. The question in this case is whether, under all the circumstances, the facts known to Hicks were sufficient to give him an objectively reasonable suspicion to believe that the Toyota had been stolen.

■ In *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993), the court explained that "reasonable suspicion" under ORS 131.615(1)

"requires an objective test of observable facts. Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience. If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for the investigation." *Id.* at 80 (citations and footnote omitted).

The trial court apparently believed that the existence or the absence of *reported* criminal activity was the critical factor in determining whether Hicks's suspicion was objectively reasonable. *See, e.g., State v. Richards,* 57 Or App 140, 643 P2d 1348 (1982) ("reasonable suspicion" existed based on a recently reported rape and the similarity of the defendant's description to the description of the perpetrator). While a report of criminal activity is a relevant factor to the determination of whether reasonable suspicion exists, it is not an essential factor. *See, e.g., State v. Crites,* 151 Or App 313, 948 P2d 257 (1997), *rev den* 327 Or 82 (1998) (reasonable suspicion existed even though there had been no report of the theft, and the fact that there are possible lawful explanations for behavior does not necessarily negate a reasonable suspicion of criminality). In addition, the trial court apparently believed that Hicks was required to investigate the reliability of the son's information more thoroughly before acting upon it. However, the son was a named informant who could have been prosecuted for giving false information to the police, ORS 162.375, and his relationship to the vehicle's owner was further evidence of the reliability of his information. Consequently, we disagree with the trial court's conclusion that the son's information was unreliable and with the court's emphasis on the absence of a report from the owner that the Toyota had been stolen.

■ The facts that confronted Hicks at the time that he stopped the Toyota as it was leaving the motel when viewed in light of his experience are the following: (1) The vehicle had been observed at a motel parking lot at 3:00 a.m., an area known to the officer as a location for criminal activities, including car theft; (2) it was being driven by a driver of a

different gender from that of the registered owner, a driver whose description did not match the description of any authorized driver of whom the owner's son was aware; (3) the vehicle, while at the motel, had been parked in an area some distance away from the room that the occupants had entered, even though there were parking areas closer to the room; and, (4) the son of the registered owner had informed the officer that, to his knowledge, there was no reason why the car would be at a motel in north Salem at that time of night or under the control of a driver meeting defendant's description.

■ "Probable cause" to believe that the crime of unauthorized use of a vehicle under ORS 164.135 (1995)[1] was not required for Hicks to make a lawful stop.[2] "Reasonable suspicion" to stop a person is a lesser standard than "probable cause." It requires only a reasonable subjective and objective belief that a crime has been committed and that the person stopped has committed the crime. In this case, we conclude that the totality of the circumstances gave rise to a reasonable suspicion that the Toyota was a stolen car and that its driver, defendant, was using it without the owner's authorization. Consequently, Hicks lawfully stopped the vehicle to

---

[1] ORS 164.135 (1995) provided:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner; or

"(b) Having custody of a vehicle, boat or aircraft pursuant to an agreement between the person or another and the owner thereof whereby the person or another is to perform for compensation a specific service for the owner involving the maintenance, repair or use of such vehicle, boat or aircraft, the person intentionally uses or operates it, without consent of the owner, for the person's own purpose in a manner constituting a gross deviation from the agreed purpose; or

"(c) Having custody of a vehicle, boat or aircraft pursuant to an agreement with the owner thereof whereby such vehicle, boat or aircraft is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement.

"(2) Unauthorized use of a vehicle, boat or aircraft is a Class C felony."

[2] "Probable cause" to arrest means "that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11) (1995).

ascertain the identity of the driver and her authority to operate it.

Reversed and remanded.