Argued and submitted December 23, 1999, reversed and remanded
August 29, 2001

## STATE OF OREGON,
*Appellant,*

*v.*

## JIMMY JOSEPH NGUYEN,
*Respondent.*

## D9801963M; A104013

31 P3d 489

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Daniel M. Carroll, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

The state appeals from a trial court order suppressing evidence acquired as the result of a motor vehicle stop. The state contends that the trial court erred in concluding that the deputy who performed the stop did not have reasonable suspicion to believe that defendant had committed a crime. ORS 131.615(1). We review for errors of law, ORS 138.220, and reverse.

At 2:51 a.m. on April 24, 1998, a named citizen informant telephoned the Washington County Sheriff's Office and reported a "car prowl" in progress at the parking lot of the Tapiola Manor Apartments on 180th Avenue in Aloha. She reported that she was observing two people breaking into a car and described the suspects as two 20- to 25-year-old males with dark hair, and wearing dark clothing. Deputy Branch was nearby and responded to the call. As Branch was headed toward the location of the reported crime, he was advised by the dispatcher that the persons involved in the car prowl were walking from the location of the crime toward 180th Avenue. Branch arrived at the scene about two minutes later, at around 2:53 a.m., and immediately saw a car pull away from the shoulder of the road on 180th Avenue, across from the apartments, and head in his direction. The car then made a U-turn in front of Branch and began heading south on 180th Avenue. Branch, who had been driving without his headlights on, turned his headlights on and began following the car. This apparently startled defendant and his companion. Branch testified that they immediately "stiffened up." Defendant, who was driving, then made an exceptionally slow turn onto another road. Branch described the turn as not "anything remotely close to being normal." Branch testified that the two occupants matched the description of two 20- to 25-year-old dark-haired individuals wearing dark clothing[1] and that there were no other pedestrians or vehicles on the road at that time.

---

[1] As noted below, the trial court found that Branch could not have determined whether the car's occupants were wearing dark clothing or whether they were male or female.

Branch turned on his overhead lights, and defendant pulled his vehicle to the side of the road. Branch approached the driver's side of the vehicle and told the suspects to keep their hands in sight. Branch testified that he recognized the two men in the vehicle based on his prior experience as a gang enforcement officer. He recognized defendant, in particular, because he had once arrested him. Within a short time of the stop, Deputy Obenauf arrived at the scene and walked to the passenger side of the car. The deputies, who could see into the vehicle, observed surgical gloves and various tools on the floor of both the passenger and the driver's sides of the car. Branch asked defendant to step out of the car and patted him down while Obenauf spoke with the passenger.[2] In Branch's pat-down of defendant, he discovered another pair of surgical gloves, a screwdriver and a pair of surgical scissors. The deputies then searched the car, its glove box and trunk, and discovered an amplifier, a CD changer with no serial numbers, a glasscutter, a flashlight, a "Leatherman" multi-purpose tool, and another screwdriver. At some point, a third deputy, Kisor, arrived at the scene, accompanied by the citizen informant who had reported the alleged crime. The informant identified the suspects as the men she had observed breaking into the car in the Tapiola Manor parking lot.

■    At trial, defendant moved to suppress the evidence that was obtained as a result of the stop, including the identification by the citizen informant, arguing that Branch did not have reasonable suspicion for the stop. The trial court granted defendant's motion, finding that Branch had a subjective belief that defendant had committed the reported crime, but that his belief was not objectively reasonable. Specifically, the court found:

---

[2] In Obenauf's conversation with the passenger, he learned that the car belonged to defendant's mother. The deputies ultimately called defendant's mother, who spoke Vietnamese and had only a cursory understanding of English. Although she consented to a search of the car, the trial court found that her consent was invalid. The court agreed, however, with the prosecutor's alternative argument that the search was valid as a search incident to a lawful arrest. On appeal, the state concedes that defendant's mother's consent was invalid. Accordingly, we do not consider that issue.

"[T]here were numerous apartments and homes in the neighborhood. The court finds it was dark on the evening in question. The Court finds Dep. Branch did not get a good look at the vehicle's occupants. The Court finds Dep. Branch based his stop on the description of two young males, 20-25, with dark hair and dark clothes. However, the Court finds Dep. Branch could not have been able to tell whether the occupants were wearing dark clothing or whether they were male or female. The Court finds that the startled appearance of the suspects was not unusual under the circumstances. The court finds the suspects were the only individuals on the road at that time."

The state assigns error to the trial court's granting of defendant's motion to suppress. The state contends that, under the totality of the circumstances, Branch had reasonable suspicion to stop defendant's vehicle. Because there is constitutionally sufficient evidence in the record to support the trial court's findings of historical facts on this issue, we are bound by the trial court's findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Consequently, our review is limited to whether the trial court was correct in its legal conclusion that the officer's suspicion was not objectively reasonable. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997).

■■ A peace officer may stop a person temporarily in order to make a reasonable inquiry of that person if the officer "reasonably suspects" that the person has committed a crime. ORS 131.615(1). " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625." ORS 131.605(5). A law enforcement officer has reasonable suspicion and, thus, is permitted to stop an individual for investigation, if the officer can point to specific and articulable facts that gave rise to the officer's suspicion that the individual committed a crime. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). Reasonable suspicion is a less demanding standard than probable cause, *State v. Hammonds/Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998), and it is dependent on "the inferences drawn from the particular circumstances confronting the officers, viewed in the light of the officer's experience." *Ehly*, 317 Or at 80 (citing *Terry v. Ohio*, 392 US 1, 21-22, 27-30, 86 S Ct 1868, 20 L Ed 2d 889 (1968)). An

officer need only form a belief that is objectively reasonable under the totality of the circumstances that an individual has committed a crime and may draw reasonable inferences from the circumstances based on the officer's experience. *State v. Loud*, 149 Or App 250, 255, 942 P2d 814, *rev den* 326 Or 58 (1997); *see also State v. Crites*, 151 Or App 313, 316, 948 P2d 757 (1997), *rev den* 327 Or 82 (1998) (because "there are possible lawful explanations for behavior does not mean that it does not also give rise to reasonable suspicion of criminality").

The trial court concluded that Branch was not reasonable in relying on the above facts to infer that the suspects were the same individuals that the citizen informant had observed prowling, because Branch "could not have been able to tell whether the occupants were wearing dark clothing" or "whether they were male or female," and "the startled appearance of the suspects was not unusual under the circumstances."

■ In reviewing the record in this case, accepting only those facts that the trial court found, we are satisfied that Branch identified specific and articulable facts that were "sufficient as a matter of law to give rise to an inference that a reasonable officer would hold the required subjective belief." *State v. Belt*, 325 Or 6, 12, 932 P2d 1177 (1997). Branch knew that criminal activity was occurring when he was notified that a named citizen informant had reported a car prowl. He knew that the witness had given a description of the suspects and indicated that they were heading across the apartment parking lot toward SW 180th Avenue. Branch arrived two minutes later at the location of the reported car break-in and saw two persons in a car on 180th Avenue across from the parking lot. This was a residential neighborhood, and it was around 3:00 a.m. Branch stated that there were no other persons or vehicles on the road. As he arrived at the location, the headlights of a car had just been turned on, and the car was leaving the scene. When Branch began following defendant's vehicle and illuminated his patrol car's headlights, the occupants of the suspect vehicle appeared startled, and the driver of the vehicle, defendant, made an unusually slow turn.

■ It is true that there are possible lawful explanations for defendant's behavior that Branch observed. Again, however, the fact that there are possible lawful explanations for behavior does not mean that it may not also give rise to reasonable suspicion of criminal activity. *Crites*, 151 Or App at 316. As noted above, the standard for establishing reasonable suspicion to justify stopping and questioning a person about possible criminal activity is less restrictive than the standard for probable cause to arrest. *Hammonds/Deshler*, 155 Or App at 627. We conclude that the standard for reasonable suspicion was satisfied. The police officer pointed to specific and articulable facts that supported a reasonable suspicion that defendant may have committed a crime.

■ Defendant argues, alternatively, that the trial court was correct in granting his motion to suppress because the citizen informant's report lacked sufficient reliability to justify the stop. Defendant is correct that, "when reasonable suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability." *State v. Villegas-Varela*, 132 Or App 112, 115, 887 P2d 809 (1994). We have held that three factors determine whether an informant is reliable: "(1) whether the informant is exposed to civil or criminal sanctions if the report is false; (2) whether the report is based on personal observation, which may be inferred from the detail of the report; and (3) whether the officer's observations corroborate the report." *State v. Cook,* 163 Or App 24, 31, 986 P2d 1228 (1999), *rev allowed* 330 Or 138 (2000). In this case, the informant gave her name, thus subjecting herself to criminal liability if the information had proved to be false, ORS 162.375. She also gave considerable detail regarding the suspects and the car break-in. Further, the information was corroborated when Branch observed two persons at the scene immediately after the call, in the location reported by the caller, and no one else was in the area. We conclude that there were adequate indicia of the reliability of the informant.

In a cross-assignment of error, defendant argues that the deputies did not have probable cause to search his person and the car that he had been driving. That deficiency, defendant contends, provides an alternative basis to affirm the trial court's grant of defendant's motion to suppress. The

state responds that the deputies were permitted to search defendant as a search incident to a lawful arrest.[3]

■■■ A warrantless search is unreasonable unless it falls within one of the few recognized exceptions to the warrant requirement of Article I, section 9, of the Oregon Constitution. *State v. Nagel*, 320 Or 24, 28, 880 P2d 451 (1994). A warrantless search incident to arrest is valid under Article I, section 9,

> "when it relates to a crime which there is probable cause to believe that the arrestee has committed, and when it is reasonable in all the circumstances. This probable cause requirement properly limits the objects to be sought in searches incident to arrest, and thus limits the intensity of the search."

*State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986) (citation omitted). Probable cause has both a subjective and an objective component. *Id.* An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and that belief must be objectively reasonable in the circumstances. *Id.*

■■■ Both Branch and Obernauf testified that the citizen informant's description of the suspects, the tools and surgical gloves that the officers observed in plain view, the officers' experience, and Branch's familiarity with defendant, led them to believe that it was more probable than not that defendant had committed the crime. Evidence in the record supported the trial court's finding that Branch had subjective probable cause to arrest defendant. *State v. Corning,* 157 Or App 379, 383, 971 P2d 894 (1998), *rev den* 328 Or 365 (1999) (subjective belief can be inferred from the totality of the circumstances). Further, we conclude that the above information and observations provided the officers with a substantial and objective basis to arrest defendant and to search his vehicle incident to a lawful arrest. *See State v. McCoy,* 155 Or App 610, 616, 964 P2d 309 (1998); *State v. Askay,* 96 Or App 563, 566, 773 P2d 785, *rev den* 308 Or 197 (1989).

---

[3] The state also argues that the search of the car was a valid warrantless search under the "automobile exception." In light of our disposition, we do not address the state's alternative argument.

■ Defendant's second cross-assignment of error concerns the trial court's ruling regarding the citizen informant's on-scene identification of defendant and his passenger as the persons involved in the reported crime. In defendant's motion to suppress, he sought to exclude evidence of the on-scene identification on the ground that the identification was unduly suggestive and, thus, unreliable. The trial court orally denied that part of defendant's motion to suppress, concluding that the identification procedure "was not overly suggestive or unlawful."[4]

■ The determination of whether an identification should be excluded as unreliable involves a two-step process:

> "First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures[.] If so, then the prosecution must satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display, or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." *State v. Classen*, 285 Or 221, 232, 590 P2d 1198 (1979) (citation and footnote omitted).

*See also State v. Najibi*, 150 Or App 194, 197, 945 P2d 1093 (1997), *rev den* 326 Or 464 (1998) (discussing the two-step analysis).

We have held, on facts analogous to those presented here, that on-scene identifications were not overly suggestive or unlawful. *See State v. Ott*, 54 Or App 309, 634 P2d 825, *rev den* 292 Or 334 (1981). In *Ott*, witnesses who had observed two bank robbers at a credit union were taken to the scene of a police stop to identify the suspects. The witnesses arrived only minutes after the robbery and observed the suspects standing near three police cars and three police officers. Both witnesses were able to identify the defendant. We held that

---

[4] Although the trial court orally rejected defendant's argument on this issue, the court's written order grants the motion to suppress without specifically identifying which evidence was suppressed under the order. Accordingly, although the trial court apparently did not intend to suppress this evidence, technically the written order did suppress the evidence. *See, e.g., State v. Swain / Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974); *Roe v. Doe*, 161 Or App 477, 483, 984 P2d 344 (1999), *rev den* 329 Or 651 (2000).

there was no indication of "impermissibly suggestive circumstances" and the "eyewitness identification evidence was properly admissible at trial." *Id.* at 316. Similarly, in *State v. Engblom*, 31 Or App 425, 428, 570 P2d 678, *rev den* 280 Or 521 (1977), we held that the identification of the defendant by a rape victim three hours after the crime, and with the defendant standing near the police car that had stopped him, was acceptable.

Here, there was nothing impermissibly suggestive about the identification of defendant. The witness told Deputy Kisor that she could identify the men if she saw them again. Shortly after she had reported the car prowling to the police, Kisor took her to the location where defendant was stopped. Kisor slowly drove her by the suspects. The overhead lights of the patrol cars were not illuminated. Although the suspects' hands were cuffed behind their backs, it is not clear from the record whether the witness saw the handcuffs. Branch testified that the cuffs were not visible to the witness, and that it appeared as though the men were simply standing with their hands behind their backs.[5] Similar to what occurred in *Ott* and *Engblom*, the witness observed the men standing near the patrol cars. Further, Kisor's statement to the witness did not encourage or pressure her to identify the men or suspects, nor did it carry the implication that they were the ones that she had seen. He said: "You are under no obligation at all to identify these guys as suspects, but if they are the ones that you saw, let me know." The witness then unequivocally identified the two men. We conclude that the on-scene identification was not impermissibly suggestive. *See Classen*, 285 Or at 232. For all of the above reasons, we hold that the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

---

[5] On cross-examination, Branch adhered to his opinion that, while he might have reached the conclusion that the suspects were handcuffed, upon seeing the two men with their hands behind their backs, he did not believe that the witness would logically draw that same conclusion. It is unclear from the record whether the witness believed that the men were handcuffed.