Submitted November 26, 2013, affirmed September 10, 2014, petition for review denied March 5, 2015 (356 Or 837)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY CARLYLE WORTHINGTON,
*Defendant-Appellant.*

Clatsop County Circuit Court
111128; A150427

335 P3d 348

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for first-degree robbery, ORS 164.415, first-degree burglary, ORS 164.225, and second-degree assault, ORS 163.175. He assigns error to the trial court's denial of his motion to suppress evidence that he argues was discovered after he was stopped without reasonable suspicion. We conclude that, under the totality of the circumstances, the officer had reasonable suspicion of defendant's involvement in criminal activity at the time he stopped defendant. Accordingly, we affirm.

We review the denial of a motion to suppress evidence for legal error, and the trial court's findings of fact bind us as long as there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

The following facts are undisputed. At 11:00 p.m. on the night in question, a suspect armed with a knife robbed a video store in Seaside. Within seconds after the robbery was reported, several officers (in about 10 patrol cars) arrived at the crime scene and established a "rolling perimeter" around the area.[1] Dispatch described the suspect as a stocky male, between five feet four inches and five feet seven inches tall, wearing black clothing.

About 45 minutes after the robbery, Officer Pohl was driving an unmarked car near the crime scene when defendant suddenly appeared from behind a parked van; Pohl thought defendant's movements were "very suspicious." Defendant was standing about 75 yards from the video store in a dimly lit area that was accessible from the store by residential alleyways running between houses. Defendant appeared to be thin, about five feet seven inches tall, and was wearing a light-colored sweatshirt. Although 45 minutes had passed since the robbery, Pohl testified that he

---

[1] Officer Pohl testified that the "rolling perimeter" was established by an unusually large number of officers because the crime occurred during a shift change for the Seaside Police Department and officers from two shifts responded. In addition, officers from Cannon Beach and the Clatsop Sheriff's Department also responded. After quickly "saturating" the area, officers drove around the crime scene interviewing people and searching for the suspect.

believed that the suspect had been confined to the area around the store by the large number of officers who had responded so quickly and established the rolling perimeter around the scene. He observed that defendant's height matched the description from dispatch. Although defendant was not dressed in dark clothing, Pohl had encountered situations previously when suspects who were fleeing police had changed their clothes in order to conceal themselves.

Pohl pulled his car alongside defendant and asked to speak with him. Defendant agreed, and Pohl got out of the car and joined defendant on the sidewalk. He asked defendant where he was coming from and where he was headed. Defendant, who looked nervous and avoided eye contact, responded that he was coming from a nearby grocery store, that he had not purchased anything, and that he was headed home. He gave Pohl his home address. Pohl thought that defendant was lying because he had visited the same grocery store 20 minutes earlier but had not seen defendant there. He also distrusted defendant's story because the location was not on a direct walking route between his house and the grocery store; defendant did not explain why he was going home by such an indirect route. Pohl suspected that defendant was involved in the robbery and requested and retained defendant's identification. Pohl knew that the robbery suspect had used a knife, so he asked defendant if he could do a patdown, and defendant consented. During the patdown, Pohl discovered large amounts of currency in defendant's pockets. Defendant later confessed to the robbery.

After being charged with first-degree robbery, first-degree burglary, and second-degree assault, defendant moved to suppress evidence of the currency and confession, arguing that Pohl lacked reasonable suspicion to justify the stop, in violation of Article I, section 9, of the Oregon Constitution.[2] The trial court denied the motion, determining that Pohl had reasonable suspicion to stop defendant. The parties proceeded to trial, and defendant entered a

---

[2] In his pretrial motion, defendant also argued that the stop violated the Fourth Amendment to the United States Constitution. However, defendant has not raised that argument on appeal.

conditional guilty plea to all three charges at the close of the state's case.

On appeal, defendant renews his argument that Pohl stopped him without reasonable suspicion. The parties agree with the trial court that a stop occurred when Pohl took and retained defendant's identification. Assuming, without deciding, that the parties' agreement is correct, the sole issue on appeal is whether, at that point, Pohl had reasonable suspicion to stop defendant under Article I, section 9. We conclude that, under the totality of the circumstances here, the stop was justified by reasonable suspicion and that the trial court correctly denied the motion to suppress.

Article I, section 9, protects the right of individuals to be "secure in their persons * * * against unreasonable search, or seizure" in the absence of a warrant. Warrantless "temporary detentions for investigatory purposes, often termed 'stops,'" *State v. Fair*, 353 Or 588, 593, 302 P3d 417 (2013), are lawful under Article I, section 9, if they are supported by an officer's reasonable suspicion that an individual has a "'connection with criminal activity.'" *State v. Jones*, 245 Or App 186, 192, 263 P3d 344 (2011) (quoting *State v. Cloman*, 254 Or 1, 6, 456 P2d 67 (1969)). Reasonable suspicion requires a two-part analysis; an officer must subjectively believe that an individual is involved in criminal activity and that belief must be objectively reasonable. *Id.* In evaluating the objective reasonableness of an officer's belief, "we examine the totality of the facts and circumstances." *State v. Berry*, 232 Or App 612, 617, 222 P3d 758 (2009); ORS 131.605(6) (defining reasonable suspicion to mean that a peace officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place" at issue).

"If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion.'" *Ehly*, 317 Or at 80. Only those facts available before the stop are considered to evaluate whether the officer's suspicion was reasonable. *See State v. Greer*, 93 Or App 409, 412, 763 P2d 158 (1988). However, "reasonable suspicion is a relatively low barrier." *Jones*, 245 Or App at 192

(internal quotation marks omitted). "Article I, section 9, requires only that law enforcement officers reasonably believe that their conduct is justified, not that they be able to articulate a correct justification on which they actually relied." *State v. Brown*, 229 Or App 294, 303, 211 P3d 315 (2009) (citing *State v. Miller*, 345 Or 176, 186-88, 191 P3d 651 (2008)). "Reasonable suspicion does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person." *State v. Dampier*, 244 Or App 547, 551, 260 P3d 730 (2011) (internal quotation marks omitted).

In this case, only the objective component of reasonable suspicion is at issue. The state focuses on the following facts to support that component: defendant was located about 75 yards from the video store 45 minutes after it was robbed; he suddenly appeared from behind a parked van; his height matched the description officers had been given in the dispatch; he appeared "extremely nervous," and he gave Pohl a "suspicious" story about his whereabouts. Although his body type and clothing did not exactly match the description from dispatch, the state contends that the other facts, together with the officer's experience of persons who had committed crimes changing clothing soon after to avoid detection, were sufficient to make the officer's subjective belief that defendant was involved in criminal activity objectively reasonable.

Although, as defendant points out, each of the cited facts individually might not be sufficient to provide reasonable suspicion, "they each may be considered as a part of the totality of the circumstances in determining whether there was reasonable suspicion." *State v. Wiseman*, 245 Or App 136, 142, 261 P3d 76 (2011). Defendant's nervousness, though insufficient on its own, is a factor that may be considered along with others. *Berry*, 232 Or App at 618. Defendant's suspicious behavior, such as his sudden emergence from behind a parked van and his unconvincing explanation about his whereabouts, likewise would not be enough in isolation, but are appropriate factors to consider along with other evidence. *See State v. Butkovich*, 87 Or App 587, 590-91, 743 P2d 752, *rev den*, 304 Or App 548 (1987)

(suspicious behavior is appropriate to consider along with other facts when criminal activity has in fact just occurred).

Contrary to defendant's contention, the fact that his clothing and body type did not fit the description of the robbery suspect does not mean that Pohl lacked reasonable suspicion to stop him based on the totality of the circumstances. We have often upheld stops where there was a discrepancy between a defendant's appearance at the time of the stop and the description from dispatch. *See, e.g., State v. Richards*, 57 Or App 140, 144, 643 P2d 1348 (1982) (explaining that the fact that the defendant had a beard and was missing a stocking cap, which differed from the suspect's description, was not significant, given his closeness to the suspect's description in other respects and his proximity in time and place to the crime scene); *State v. Ragsdale*, 34 Or App 549, 554, 579 P2d 286, *rev den*, 283 Or 503 (1978) (upholding a stop of a small white car when a small dark car had been reported to the police). Here, although defendant did not match the description exactly, Pohl's training and experience suggested that people may change clothing after committing a crime in order to evade detection. *See Ehly*, 317 Or at 80 ("Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience.")

Defendant also minimizes the significance of his proximity to the robbery scene 45 minutes after it occurred. However, this was not a situation where we must evaluate generalized suspicion; rather, Pohl knew that a serious crime had been committed close by and that an unusually large number of officers had been patrolling the area, increasing the possibility that the suspect was still nearby.

The totality of the circumstances here, considered with Pohl's application of his experience to interpret those circumstances, supported reasonable suspicion that defendant was involved in criminal activity. Accordingly, the court did not err in denying defendant's motion to suppress.

Affirmed.