TOOKEY, J.
*772 The state appeals from a trial court order suppressing evidence acquired by a sheriff's deputy after the deputy stopped defendant. On appeal, the state contends that the trial court erred when it concluded that the deputy lacked reasonable suspicion that defendant had committed a crime. For the reasons that follow, we reverse and remand.
I. STANDARD OF REVIEW
"We review a trial court's [ruling on] a motion to suppress for legal error." State v. Fuller , 296 Or. App. 425, 426, 438 P.3d 431 (2019) (citing State v. Maciel-Figueroa , 361 Or. 163, 165, 389 P.3d 1121 (2017) ). "We are bound by the court's factual findings if there is constitutionally sufficient evidence in the record to support them." Id. "If the court did not enter express findings and there is 'evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently' with its ultimate legal conclusion." Id. (quoting Maciel-Figueroa , 361 Or. at 166, 389 P.3d 1121 ).
II. HISTORICAL AND PROCEDURAL FACTS
At 12:48 a.m., Deputy Waterbury responded to a report from dispatch. A named caller *570 had reported a car prowl near a house on Southwest Alexander Street in Aloha, Oregon. Waterbury learned from the dispatcher that a caller had seen a man in her vehicle "going through things." The caller described the suspect as a "white male in [his] 30s with long brown hair, and a beard." The caller also reported that the suspect was wearing a red hat and shorts. Dispatch advised Waterbury that the caller had seen the suspect walk away from her car and toward a vehicle, and that the vehicle then "took off."
Three minutes later, at 12:51 a.m., as Waterbury drove toward the location of the car prowl, he saw defendant just around the corner from the caller's address. Defendant was approximately a block away from the location of the car prowl and was the only person Waterbury saw on the street at that time. Waterbury pulled over, turned off his headlights, and walked over to defendant, who was smoking a *773 cigarette next to a parked car. Waterbury testified that he believed that defendant matched the caller's description of the car prowler: "He was white, approximately 30s, beard, and long brown hair." Waterbury did not recall whether defendant was wearing a hat at the time of the stop and did not testify regarding whether defendant was wearing shorts.
After approaching defendant, Waterbury identified himself and asked defendant "what he was doing there." Defendant responded that he was "just relaxing, having a smoke." After further conversation, Waterbury asked defendant for his identification. After defendant gave the identification to Waterbury, defendant asked Waterbury what "this was all about," and Waterbury told defendant that he matched the description of a suspect who had broken into a car.
After some additional conversation between defendant and Waterbury, defendant said "he wanted to be honest," and told Waterbury that he "went into someone's car" that night. Subsequently, defendant was arrested and charged with, among other offenses, one count of unlawful entry into a motor vehicle, ORS 164.272.
Before trial, defendant moved to suppress evidence, relying on Article I, section 9, of the Oregon Constitution, arguing that he had been unlawfully seized by Waterbury.[1] Defendant sought suppression of all evidence that resulted from the purported unlawful seizure. The trial court first determined that defendant was "stopped" by Waterbury when Waterbury (1) asked defendant for defendant's identification, (2) stated that defendant matched the description of a person who had committed a crime, and (3) stated that he was investigating that crime. It next found that Waterbury, at the time that he stopped defendant, had a subjective belief that defendant had committed the reported crime, but concluded that Waterbury's suspicion was not objectively reasonable. Because it concluded that Waterbury's *774 suspicion was not objectively reasonable, it granted defendant's motion.
III. ANALYSIS
Under Article I, section 9, a "stop" is "the kind of seizure of a person that is a temporary detention for investigatory purposes." Maciel-Figueroa , 361 Or. at 169-70, 389 P.3d 1121. In Maciel-Figueroa , the Supreme Court explained:
"For police officers to make a stop, they must reasonably suspect-based on specific and articulable facts-that the person committed a specific crime or type of crime or was about to commit a specific crime or type of crime. For a court to determine that an investigative stop was lawful under Article I, section 9, the court (1) must find that the officers actually suspected that the stopped person had committed a specific crime or type of crime, or was about to commit a specific crime or type of crime, and (2) must conclude, based on the record, that the officers' subjective belief-their suspicion-was objectively reasonable under the totality of the circumstances existing at the time of the stop."
Id. at 182, 389 P.3d 1121.
On appeal, neither party disputes the trial court's determination that a stop occurred *571 when Waterbury asked defendant for his identification, stated that defendant matched the description of a person who had committed a crime, and stated that he was investigating that crime. Nor does either party dispute the trial court's finding that, at the time of the stop in this case, Waterbury had a subjective belief that defendant had committed a specific crime-viz. , unlawful entry into a motor vehicle. The sole issue on which the parties disagree relates to the trial court's conclusion that Waterbury's suspicion that defendant had committed unlawful entry into a motor vehicle was not objectively reasonable under the totality of the circumstances existing at the time of the stop.
" '[T]he established standard for reasonable suspicion supporting an investigatory stop of a defendant is met when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type *775 of crime.' " Fuller , 296 Or. App. at 428-29, 438 P.3d 431 (quoting Maciel-Figueroa , 361 Or. at 165, 389 P.3d 1121 ). "The articulated facts need not support certainty that a suspect is engaged in criminal activity; rather, based on those specific facts, 'a reviewing court must [be able to] conclude that the officer's subjective belief could be true, as a matter of logic.' " Id. at 429, 438 P.3d 431 (quoting Maciel-Figueroa , 361 Or. at 184, 389 P.3d 1121 ; brackets and first emphasis in Fuller ; second emphasis in Maciel-Figueroa ). Reasonable suspicion, as we have previously observed, "is a relatively low barrier," State v. Braukman , 246 Or. App. 123, 127, 265 P.3d 28 (2011), rev. den. , 351 Or. 675, 276 P.3d 1123 (2012), and is "a less demanding standard than probable cause," State v. Hames , 223 Or. App. 624, 628, 196 P.3d 88 (2008). Further, "[t]he possibility that there may be a non-criminal explanation for the facts observed or that the officer's suspicion will turn out to be wrong does not defeat the reasonableness of the suspicion." Braukman , 246 Or. App. at 127, 265 P.3d 28 (internal quotation marks and citation omitted).
In analyzing this issue, two cases cited by the parties are particularly instructive: State v. Blackstone , 289 Or. App. 421, 410 P.3d 354 (2017), and State v. Nguyen , 176 Or. App. 258, 31 P.3d 489 (2001).
In Blackstone , at around 1:40 a.m., an officer saw two men on Coburg Road in Eugene, Oregon, carrying pillowcases that appeared to be full of objects. 289 Or. App. at 423-24, 410 P.3d 354. Upon seeing the officer, they sprinted away. Id. at 424, 410 P.3d 354. Though no crimes had been reported, the officer suspected a "possible burglary" and radioed other officers to assist in setting up a perimeter. Id. As pertinent to our analysis here, the officer described one of the suspects as a white male in his "late teens or early 20s" and wearing a "darker jacket or hoody." Id.
Thirty minutes later, at 2:14 a.m., different officers saw the defendant riding a bicycle down Elysium Street toward Coburg Road "directly toward their patrol car," which was parked about a block away from where the suspects were seen. Id. One of the officers thought that the defendant "vaguely matched the description" of the suspect described above because he was "a white male, [who] looked at a distance at night like he was in his 20s, and was wearing dark *776 clothing." Id. (internal quotation marks omitted). After stopping the defendant, the officer discovered contraband. Id. at 425, 410 P.3d 354.
The defendant subsequently moved to suppress the evidence, arguing, among other points, that the officer did not have reasonable suspicion to stop him for burglary. Id. The trial court denied defendant's motion. Id. at 426, 410 P.3d 354.
On appeal, we noted that "[p]utting on evidence that defendant is a white male, who may or may not have matched the age range of the suspect, and who may or may not have been wearing a dark jacket or hoodie, is insufficient to establish objective reasonable suspicion that defendant had committed burglary." Id. at 433, 410 P.3d 354. We then concluded that the state had failed to prove that the officer's "suspicion that defendant had committed burglary was objectively reasonable." Id. We so concluded for four principal reasons:
"First, * * * [the officer] had heard only a minimal physical description of the * * *
*572 young male over the radio, and defendant matched even that description only 'vaguely' and 'from a distance.' Second, it was apparent to [the officer] that defendant did not match the * * * young male's overall description in several regards. He was not carrying a pillowcase or anything suspicious. He was alone, not with another young white male. He was on a bicycle, not on foot. Third, [the officer] did not know whether anyone had committed a crime. No one had witnessed or reported a burglary. While [the original officer] may have viewed the two young males' conduct as suspicious, the police's uncertainty whether any crime had actually been committed is part of the totality of circumstances as far as the likelihood that anyone, let alone defendant, had committed a burglary. Fourth, defendant rode his bicycle directly toward a police car with two officers sitting inside it. That is the exact opposite of the behavior of the two young males-sprinting away at the sight of a police car-and facially inconsistent with a desire to evade contact with the police."
Id. at 433-34, 410 P.3d 354 (emphasis in original).
Additionally, we explained that the fact "that police encountered defendant only a block from where [the original officer] had seen the two young males certainly has some relevance, given the existence of the perimeter," but that *777 "mere proximity to a public sidewalk where someone suspicious was seen running a half hour earlier is not enough to detain citizens at large," and observed that "Coburg Road is a sizable road with businesses up and down it." Id. at 433, 410 P.3d 354. We further explained that "generally speaking, subject to specific circumstances, encountering someone a few blocks from a crime scene a few minutes after a crime occurred is the type of proximity fact that is inherently significant, whereas seeing someone in a public place that a suspicious person ran through a half hour earlier has less inherent significance." Id. We also noted that the late hour the defendant was stopped was a "relevant circumstance," but that "the hour alone [was] not enough to tip the scales [in favor of the state] in this case." Id.
Conversely, in Nguyen , around 2:51 a.m., a caller telephoned police to report a "car prowl" in progress at an apartment complex on 180th Avenue in Aloha, Oregon, describing the suspects as "two 20- to 25-year-old males with dark hair, and wearing dark clothing." 176 Or. App. at 260, 31 P.3d 489. A nearby officer responded and was informed by dispatch that the suspects were traveling on foot from the location of the crime toward 180th Avenue. Id. The officer arrived at the scene two minutes later, with his headlights off, and saw a car pull away from the shoulder of 180th Avenue across from the apartments. Id. The officer turned his headlights on and began following the car, which "apparently startled defendant and his companion," causing them to "stiffen[ ] up." Id. The defendant then made an "exceptionally slow turn onto another road," which the officer described as "not anything remotely close to being normal." Id. (internal quotation marks omitted). There were no other pedestrians or vehicles on the road at that time. Id. The officer subsequently stopped the defendant, and the defendant was charged with a crime. Id. at 261, 31 P.3d 489.
At trial, the defendant moved to suppress the evidence that was obtained as a result of the stop, arguing that the officer "did not have reasonable suspicion for the stop." Id. The trial court granted the defendant's motion, "finding that [the officer] had a subjective belief that defendant had committed the reported crime," but concluding that "his *778 belief was not objectively reasonable." Id. To support that finding and conclusion, the trial court found the following facts:
"[T]here were numerous apartments and homes in the neighborhood. The Court finds it was dark on the evening in question. The Court finds [the officer] did not get a good look at the vehicle's occupants. The Court finds [the officer] based his stop on the description of two young males, 20-25, with dark hair and dark clothes. However, the Court finds [the officer] could not have been able to tell whether the occupants were wearing dark clothing or whether they were male or female. The Court finds that the startled appearance of the suspects was not unusual under the *573 circumstances. The Court finds the suspects were the only individuals on the road at that time."
Id. at 262, 31 P.3d 489 (first brackets in original; internal quotation marks omitted).
The state appealed, and we reversed and remanded, concluding "the standard for reasonable suspicion was satisfied." Id. at 260, 264, 267, 31 P.3d 489. We so concluded because,
"[the officer] knew that criminal activity was occurring when he was notified that a named citizen informant had reported a car prowl. He knew that the witness had given a description of the suspects and indicated that they were heading across the apartment parking lot toward SW 180th Avenue. [The officer] arrived two minutes later at the location of the reported car break-in and saw two persons in a car on 180th Avenue across from the parking lot. This was a residential neighborhood, and it was around 3:00 a.m. [The officer] stated that there were no other persons or vehicles on the road. As he arrived at the location, the headlights of a car had just been turned on, and the car was leaving the scene. When [the officer] began following defendant's vehicle and illuminated his patrol car's headlights, the occupants of the suspect vehicle appeared startled, and the driver of the vehicle, defendant, made an unusually slow turn."
Id. at 263, 31 P.3d 489.
Turning to the instant case, considering the totality of the circumstances existing at the time of the stop, we conclude that Waterbury's suspicion that defendant *779 had committed unlawful entry into a motor vehicle was objectively reasonable. Four considerations lead us to that conclusion.
First, with regard to physical appearance, much of defendant's appearance matched the reported physical characteristics of the suspect: defendant was a white male, approximately in his 30s, with a beard and long brown hair. Defendant contends that this case is similar to Blackstone , but in this case, because the caller identified the suspect's hair color and hair style, the description of the suspect was less "generic" than the description of the suspect in Blackstone. 289 Or. App. at 432, 410 P.3d 354 (noting the description of the suspect was "fairly generic" where, among other things, it did "not include the suspect's * * * hair color, or hairstyle"). Additionally, unlike in Blackstone , where the defendant "may or may not have matched the age range of the suspect," id. at 433, 410 P.3d 354, in this case, the defendant did match the age range of the suspect. And, in regard to clothing, although Waterbury could not recall whether defendant was wearing a hat, that is not dispositive given the other facts in this case. Compare State v. Richards , 57 Or. App. 140, 144, 643 P.2d 1348 (1982) (explaining that facts that the defendant had a beard and was missing a stocking cap, which differed from the description of the suspect, were not "significant" in assessing reasonable suspicion, given the defendant's closeness to the suspect's description in "all other respects and his proximity in time and place to the crime"),[2] with Blackstone , 289 Or. App. at 423-24, 433, 410 P.3d 354 (officer's suspicion not objectively reasonable where numerous differences existed between the overall description of the suspect and the defendant, including that the suspect was described as walking with another individual and holding a pillow case, but the defendant was on a bike, alone, and without a pillow case).
*780 Second, unlike in Blackstone , where police had "uncertainty whether any crime had actually been committed," 289 Or. App. at 434, 410 P.3d 354, in this case, like the officer in Nguyen , Waterbury "knew that *574 criminal activity was occurring when he was notified that * * * [an] informant had reported a car prowl," 176 Or. App. at 263, 31 P.3d 489. A "report of criminal activity is a relevant factor to the determination of whether reasonable suspicion exists." State v. Ricks , 166 Or. App. 436, 440, 998 P.2d 234, adh'd to as modified on recons. , 168 Or. App. 552, 7 P.3d 675, rev. den. , 331 Or. 429, 26 P.3d 148 (2000).
Third, Waterbury spotted defendant three minutes after Waterbury was dispatched, around the corner from where the car prowl had occurred, approximately one block away. As noted in Blackstone , "encountering someone a few blocks from a crime scene a few minutes after a crime occurred is the type of proximity fact that is inherently significant." 289 Or. App. at 433, 410 P.3d 354. Defendant contends that, "given the caller's description that the suspect drove away," "defendant's proximity to the crime scene was not reasonably suspicious." We disagree. It is reasonable to infer that the car prowler might not have fled the area, given that there was no indication that the car prowler was aware that law enforcement had been contacted.
Fourth, when defendant was stopped it was 12:51 a.m.-which, as noted above, was just three minutes after Waterbury was dispatched-and defendant was the only person Waterbury saw in the area of the reported crime. While it is "not unlawful to be out late at night," those facts are relevant to our analysis, and support the conclusion that Waterbury's suspicion was objectively reasonable.[3] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 433, 410 P.3d 354 (noting "the late hour" is "definitely a relevant circumstance"); Nguyen , 176 Or. App. at 263, 31 P.3d 489 (in assessing whether *781 an officer's suspicion was objectively reasonable, noting that "there were no other persons or vehicles on the road" and that the officer arrived at the location "two minutes" after a car break-in was reported).
In light of all of those considerations, we conclude that Waterbury's suspicion that defendant had committed unlawful entry into a motor vehicle was objectively reasonable under the totality of the circumstances existing at the time of the stop. Consequently, we reverse and remand.
Reversed and remanded.

Article I, section 9, provides, in part:
"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

Although Richards analyzed reasonable suspicion under the statutes authorizing criminal investigative stops, ORS 131.615 and ORS 131.605, 57 Or. App. at 143, 643 P.2d 1348, our analysis in Richards is relevant in analyzing the reasonable-suspicion standard that applies in cases challenging the constitutionality of a stop under Article I, section 9. See Maciel-Figueroa , 361 Or. at 171-72, 389 P.3d 1121 ("[A]s appropriate, this court will borrow from its decisions applying the reasonable-suspicion standard contained in the statutes authorizing criminal investigative stops, ORS 131.615 and ORS 131.605(6), when analyzing the reasonable-suspicion standard that applies in cases challenging the constitutionality of a stop under Article I, section 9." (Footnote omitted.)).

Defendant also contends that Waterbury's suspicion was not objectively reasonable because "defendant's demeanor was at odds with the behavior expected of a suspect who just committed a crime": He "did not run away or attempt to evade Waterbury." Although we agree that a defendant's "suspicious behavior * * * [is an] appropriate factor[ ] to consider along with other evidence" in evaluating whether an officer's suspicion is objectively reasonable, State v. Worthington , 265 Or. App. 368, 372, 335 P.3d 348 (2014), rev. den. , 356 Or. 837, 346 P.3d 496, rev. den. , 357 Or. 300, 353 P.3d 595 (2015), even accepting that defendant's demeanor was at odds with the behavior expected of a suspect who just committed a crime, given the other facts present in this case, that fact is not dispositive.