Argued and submitted August 29, 2012, reversed and remanded May 30, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RAMONA DIANE KINGSMITH,
aka Ramona Dione Kingsmith,
*Defendant-Appellant.*

Union County Circuit Court
F17041; A146604

302 P3d 471

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant, who was convicted, following a conditional guilty plea, of possession of methamphetamine, ORS 475.894, appeals. She assigns error to the trial court's denial of her motion to suppress, contending that the extension of the traffic stop of a car in which she was a passenger was not supported by reasonable suspicion of criminal activity. Or Const, Art I, § 9; ORS 131.615. Defendant argues, in the alternative that even if the officers who stopped the car had reasonable suspicion that certain occupants of the car were involved in criminal drug activity, the evidence did not support a reasonable suspicion that defendant, *as an individual*, was involved in criminal drug activity. As amplified below, we agree with defendant's latter contention. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress, and we reverse and remand.

We state the facts consistently with the trial court's explicit and necessarily implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). On the evening of February 5, 2010, Oregon State Police Troopers Jackson and Routt were conducting speed enforcement on Interstate 84 (I-84) between La Grande and North Powder in Union County. The troopers were in the same patrol car parked on an overpass with their lights off. They observed an eastbound car exit I-84 and park in a dark area on a dead-end road near the overpass. After the car stopped, the driver's side door opened and a person got out and crossed in front of that car's headlights. Approximately 30 seconds later, a person entered the driver's side door and the car backed up. At that point, the troopers observed a second car's headlights near where the first car had parked.

Jackson believed that an exchange had occurred between the occupants of the two vehicles, and he thought that the interaction "was unusual just because of the remoteness" of the location (the closest town, La Grande, was 12 miles away). The troopers "were curious about why somebody would meet" in that remote location; consequently, the troopers

decided to follow the two cars.[1] Both cars passed the patrol car. It appeared that one car was going to head west on I-84, toward La Grande, "but then it noticed [the] patrol car, which was blacked out, on top of the overpass right in front of it, and it made a quick right-hand turn onto the [east-bound] on ramp," toward North Powder. The troopers followed and "ran the plates" on both of the cars. One car "came back clean" and the troopers did not observe the driver of that car commit any traffic infractions. The other car, a dark blue, two-door Honda Civic, had window tint that was so dark that the officers could not "tell how many occupants were in the car or even what gender the occupants were," and a nonoperational license-plate light, both of which constitute traffic violations. The troopers called in the Civic's license plates and discovered that the registered owner was a man named Farmer. The troopers then initiated a traffic stop.

Routt approached the Civic and contacted the driver, Farmer. Routt noticed that Farmer seemed "overly friendly" and that a "faint odor of marijuana" emanated from the car. Routt did not speak with the front-seat passenger or defendant, who was in the back seat. Farmer provided Routt his driver's license and proof of insurance, but failed to provide a valid vehicle registration card. Routt returned to the patrol car to "run a wants and warrants check" on Farmer and to process a traffic citation for failure to carry a valid vehicle registration card.

While Routt had been speaking with Farmer and obtaining his driving documents, Jackson remained at the patrol car and learned from a phone call to a La Grande police officer that Farmer had a pending case for unlawful manufacture and distribution of marijuana. After Routt returned to the patrol car, and while he was processing the traffic citation, Jackson spoke with Farmer and observed that he "was extremely nervous," his hands were shaking, and he had sores on his face that, in Jackson's view, were consistent with methamphetamine use. Jackson also noticed that Farmer had a laser detector in the vehicle, which

---

[1] Jackson testified that he did not know which of the vehicles the officers had observed exit I-84 and which vehicle had been already present on the dark country road.

Jackson believed Farmer used "to avoid police contact." While Jackson was speaking with Farmer, the front-seat passenger seemed nervous and "kept putting her foot on and off" a metal case at her feet. Based on those circumstances—perceived during the time that Routt was still processing the citation—Jackson developed suspicion that Farmer and the front-seat passenger might have been involved in criminal drug activity.

Acting on that suspicion, Jackson returned to the patrol car and called Trooper McDowell, a state police K-9 handler who had been monitoring traffic on I-84, approximately 10 miles away. McDowell concurred that the circumstances suggested possible drug activity, and he instructed Jackson to ask Farmer for consent to search the car. Farmer denied Jackson's request for consent. Jackson then called McDowell, who agreed to bring his dog to perform a dog-sniff search of Farmer's car. It took Routt approximately 10 minutes to complete the citation and approximately 17 additional minutes for McDowell to arrive. The troopers instructed all of the occupants to exit the vehicle for officer safety reasons during the dog-sniff search. Routt testified that he did not have any contact with defendant until all of the occupants were removed from the vehicle for the K-9 search. Similarly, Jackson testified that "I never even saw [defendant] until she got out of the vehicle," and that none of his suspicion "was based on anything to do with [defendant]."

The dog alerted to the front door seam. The police searched the car and found defendant's purse on the back seat. The police found an opaque container that held methamphetamine and a methamphetamine pipe in defendant's purse. A subsequent search of defendant's person produced two additional methamphetamine pipes.

Defendant was charged with unlawful possession of methamphetamine, ORS 475.894. She moved to suppress all of the evidence arguing, *inter alia*, that the troopers lacked reasonable suspicion to extend the initial traffic stop. Specifically, defendant argued that

"the following factors[,] * * * even taken together do NOT amount to reasonable suspicion of criminal activity in drugs:

"1.   The car in which defendant was riding had a brief rendezvous on a freeway off-ramp with another vehicle, that was not stopped by the troopers.

"2.   A 'strong odor' that troopers could not recognize coming from the car.

"3.   Front seat passenger was fidgeting and had her foot on a metal case.

"4.   Driver had methamphetamine sores on his face and was nervous.

"It is noteworthy that none of these factors involved defendant. It is determinative that, even taken in combination, they do not constitute reasonable suspicion of criminal activity. Past drug offenses—which defendant did not have—are not sufficient to create reasonable suspicion, even when it is conjunction with visiting a 'known drug house.' Neither are 'meth sores'—which, again, defendant did not have, [] sufficient."

(Citation omitted.) Defendant also challenged the lawfulness of the dog-sniff search, the search of her purse and a closed, opaque container within her purse, and the search of her person.

In response, the state conceded that defendant was seized during the encounter, but argued that the stop was not unlawfully extended because "the officers developed reasonable suspicion at the same time and during the course of the traffic stop." Specifically, the state contended that, "[g]iven the totality of the circumstances, Trooper Jackson believed that the occupants of the vehicle were involved in illegal drug activity, and had possibly just made a drug deal." The state additionally responded that the dog-sniff search was a valid part of the investigation of criminal drug activity and that the search of defendant's purse was justified by the automobile exception to the warrant requirement. The state conceded that the search of defendant's person was invalid, but argued that the evidence would have inevitably been discovered in a search incident to arrest.

The trial court granted defendant's suppression motion in part.[2] As pertinent to this appeal, the trial court denied the motion to suppress the evidence obtained during the search of the vehicle and defendant's purse. In so ruling, the court initially noted the state's concession that defendant was in fact seized during the encounter.[3] Consequently, the trial court did not analyze whether defendant had been seized—but, instead, addressed "the issue of the reasonableness of the time defendant was waiting while Mr. Farmer was being investigated for the traffic violations and drug offenses." The court determined that the extended seizure and subsequent search were supported by reasonable suspicion.

In so holding, the court made extensive, detailed factual findings and ultimately determined that "Troopers Jackson and Routt had reasonable suspicion to detain Farmer for a reasonable period of time to investigate drug offenses"; further, "waiting 17 minutes from the completion of the citation to the arrival of the drug dog was a reasonable length of time." The court determined that the officers were justified in executing the dog-sniff search and, after the dog alerted, the officers had probable cause to search the vehicle. The trial court determined that the automobile exception to the warrant requirement applied to the search of the car and closed containers within the car that could contain drugs, including defendant's purse and the case within her purse.

Defendant entered a conditional guilty plea, reserving her right to appeal the denial of her motion to suppress. On appeal, defendant contends that the troopers lacked reasonable suspicion to extend the traffic stop beyond the scope of questioning and duration required to investigate the traffic infractions and issue a citation. In that regard, defendant's argument applies to all of the occupants of the

---

[2] The court suppressed the evidence obtained during the search of defendant's person.

[3] *Contra State v. Amaya*, 336 Or 616, 630, 89 P3d 1163 (2004) ("It is a truism that all passengers in a validly stopped car have been 'stopped,' at least physically. However, such a stop is not a 'seizure' of those passengers for constitutional purposes.").

vehicle. Defendant also argues that, "[f]inally, and most importantly, all of the facts that Jackson cited as giving rise to his suspicion of drug activity related to Farmer and the other passenger and not to defendant. Jackson identified no actions or physical characteristics that pertained directly to defendant * * *." In other words, defendant contends that Jackson lacked reasonable suspicion that *she* had committed a crime and, thus, lacked any justification to detain her. For the reasons that follow, we agree with defendant's second argument.

We begin our analysis by summarizing the salient legal principles. Article I, section 9, of the Oregon Constitution secures the right to be free from unreasonable search or seizure.[4] A stop is "a type of seizure that involves a temporary restraint on a person's liberty" that is reasonable if justified "by reasonable suspicion that the person has been involved in criminal activity." *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). Officers may "stop and briefly detain motorists *for investigation of noncriminal traffic violations*," *State v. Rodgers/Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010) (emphasis in original); however,

> "[p]olice authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. Other or further conduct by the police, beyond that reasonably related to the traffic violation, must be *justified* on some basis other than the traffic violation."

*Id.* at 623 (emphasis in original). "If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation." *Ehly*, 317 Or at 80. "A police officer's suspicion must be particularized to the individual based on the individual's own conduct." *State v. Miglavs*, 337 Or 1, 12, 90 P3d 607 (2004). "We consider the totality of the

---

[4] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

circumstances that existed at the time and place that the officer acted to determine whether the officer's suspicion was reasonable." *State v. Morton*, 151 Or App 734, 738, 951 P2d 179 (1997), *rev den*, 327 Or 521 (1998).

As noted above, the state in this case conceded before the trial court that defendant was seized when the vehicle in which she was a passenger was stopped. That concession—the correctness of which we are not asked to reexamine—is an essential predicate to the analysis that follows.[5] Given that concession—and even assuming, without deciding, that the officers had reasonable suspicion to extend the scope and duration of the stop in order to investigate possible illegal drug activity with respect to Farmer[6]—the question becomes whether, at the time that the stop was extended, there were "specific and articulable facts" from which Jackson could have formed a reasonable suspicion that *defendant* had committed a crime based on defendant's conduct.

Simply put, neither officer made any direct observations of defendant either before she was stopped or during the traffic stop. Jackson testified that "I never even saw [defendant] until she got out of the vehicle," and that none of his suspicion "was based on anything to do with [defendant]." Routt testified that he did not interact with defendant until she got out of the car for the K-9 search. Under those circumstances, the only factors that could reasonably relate to defendant are the "unusual" rendezvous on the overpass and the "faint odor" of marijuana in the car. As to the latter, we have held that the general odor of marijuana in a vehicle does not alone give rise to a reasonable suspicion that a passenger of that vehicle has committed a crime. *Morton*, 151 Or App at

[5] During oral argument on appeal, concerned with "the potential confusion that might result," counsel for the state asked that we "point out" that the state had conceded that defendant was seized. We do so.

[6] The state did not argue before the trial court, and does not argue on appeal, that the evidence in defendant's purse would inevitably have been discovered pursuant to a lawful search of the car. The lawfulness of the search of the car is subject of a separate appeal, *State v. Farmer* (A146950). In that appeal, Farmer challenges the validity of the dog-sniff search, arguing that "[t]he state failed to meet its burden to prove that the trooper and the dog were a reliable drug-detection team capable of proving probable cause to support a warrantless search." Farmer does not contend that the extended seizure was not supported by reasonable suspicion.

738-39. The issue thus reduces to the significance of defendant's presence at the overpass exchange.

Defendant argues that her mere presence during the suspected drug transaction did not support reasonable suspicion that *she* had committed a crime. In that regard, defendant relies on *State v. Holdorf*, 250 Or App 509, 280 P3d 404 (2012), *rev allowed*, 353 Or 208 (2013). In *Holdorf*, the defendant was a passenger in an SUV that Albany Police Officer Salang lawfully stopped for a traffic infraction. 250 Or App at 510. The driver was a wanted felon suspected of criminal drug activity. A police officer had recently observed the driver in the same SUV engage in what that officer "believed was a drug transaction in a fast food restaurant parking lot," *id.*, and, on another occasion, the same driver, using the same SUV, had attempted to elude a police officer in a high-speed chase. After stopping the SUV, "Salang noticed that [the defendant] appeared nervous and fidgety, and, based on those facts, Salang suspected that he was under the influence of methamphetamine." *Id.* at 510-11. During the traffic stop, the defendant asked if he could leave, and Salang replied that he could not. *Id.* at 511. After the driver was taken into custody, Salang questioned the defendant about weapons and contraband, and eventually searched the defendant, discovering marijuana and methamphetamine. *Id.*

The defendant was charged with possession of marijuana, ORS 475.864(3), and possession of methamphetamine, ORS 475.894. He moved to suppress all of the evidence against him, arguing that Salang had stopped him without reasonable suspicion that he was involved in criminal activity. The trial court denied the motion to suppress, and the defendant, after entering a conditional guilty plea, was convicted.

The defendant appealed, challenging the denial of suppression. We reversed. In so holding, we emphasized that, notwithstanding the plethora of circumstances (described above) linking the driver and the SUV to criminal (*e.g.*, drug-related) activity, the facts that pertained to the defendant were insufficient to support reasonable suspicion that he was involved in criminal activity at the time that he was

seized (by virtue of Salang refusing to let him leave). Specifically, "[t]he only fact cited by Salang that relate[d] to [the] defendant himself, as opposed to the SUV or [the driver], [was] his nervous, fidgety demeanor," and, to the extent that the defendant's demeanor indicated recent drug use, that was not enough to support reasonable suspicion of criminal activity. *Id.* at 514. Of particular pertinence to the present appeal, the defendant's association with, and proximity to, the driver—who was suspected of recently engaging in criminal activity—was not enough for the officer to objectively suspect that the defendant himself had recently committed a crime. *Id.* at 514-15.

Our holding in *Holdorf* comports with our precedents in which we have held that mere proximity to suspected criminal activity, or association with a suspected (or known) criminal, is insufficient to support reasonable suspicion. Rather, as we have emphasized, an officer must "point to specific and articulable facts," *Ehly*, 317 Or at 80, with respect to an individual's conduct, that that individual has committed a crime. *See, e.g., State v. Regnier*, 229 Or App 525, 535-36, 212 P3d 1269 (2009) (concluding that the "circumstances [did] not support an individualized suspicion that defendants were in personal constructive possession of the alcoholic beverages that were in the possession of others in the group" and that mere "presence, in and of itself, is not enough under the law to give rise to a reasonable inference that defendants had participated individually"); *State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008) ("The mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion that that person is also involved with methamphetamine."); *State v. Manss*, 99 Or App 498, 502, 783 P2d 24 (1989) (concluding that a stop was not supported by reasonable suspicion where "there was *nothing* to connect defendant with the attempt to sell drugs, except for her association with the *person* who had made the attempt" (emphases in original)).

Here, the state agrees that, as a general proposition, reasonable suspicion cannot be justified by an officer's observation of an individual's mere association with someone suspected of criminal activity. The state further acknowledges

that the events that the officers observed on the overpass did not, without more, support reasonable suspicion. However, the state argues, the circumstances of the "unusual" exchange on the overpass, in combination with the other indicia of Farmer's drug activity, were sufficient to support reasonable suspicion to detain *all* of the occupants in the car, including defendant, because of the possibility that *any* occupant could be an accomplice in the suspected criminal drug activity.

We reject the state's generalized suspicion analysis. The state does not—and, indeed, cannot—point to any evidence that defendant was involved in the exchange that occurred on the overpass beyond her mere presence in the car. The officers did not see who exited and entered the car on the overpass, but they did see that whoever it was got out on the driver's side—and, when the two-door Civic was subsequently stopped, defendant was in the back seat. Furthermore, neither officer interacted with defendant until after the traffic stop had been extended and the K-9 sniff-search was underway; thus, the seizure of defendant was not based on any observations as to defendant's conduct or demeanor.

Under those circumstances, we cannot conclude that the officers possessed objectively reasonable suspicion that defendant was involved in criminal conduct sufficient to justify continued detention of defendant beyond the point of investigating the traffic infractions and issuing a traffic citation. Because the officers lacked individualized suspicion as to defendant, the extended seizure of defendant was unlawful and the challenged inculpatory evidence was obtained during an unlawful seizure. *State v. Hall*, 339 Or 7, 24, 115 P3d 908 (2005). Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.