DEHOOG, P. J.
*432 *426 Defendant appeals a judgment of conviction entered after a jury found him guilty of unlawfully transporting special forest products, ORS 164.813(3).[1] Defendant assigns error to the trial court's denial of his motion to suppress, arguing that the court erred in concluding that the sheriff's deputy who stopped defendant as he was driving his truck reasonably suspected that he was committing that offense. We agree with defendant that the deputy lacked reasonable suspicion to detain him and, therefore, the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.
We review a trial court's denial of a motion to suppress for legal error. State v. Maciel-Figueroa , 361 Or. 163, 165, 389 P.3d 1121 (2017). We are bound by the court's factual findings if there is constitutionally sufficient evidence in the record to support them. Id. at 165-66, 389 P.3d 1121. If the court did not enter express findings and there is "evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently" with its ultimate legal conclusion. Id. at 166, 389 P.3d 1121.
At the suppression hearing, Deputy Childers of the Crook County Sheriff's Office testified that he had observed a truck driving through downtown Prineville at approximately 2:15 a.m. The truck was hauling approximately three-quarters of a cord of cut wood rounds. Childers saw that there were no landowner or government-issued firewood tags attached to the load, which he understood ORS 164.813(3) to require. Childers testified that, based on his training and experience, he knows that often individuals will cut firewood in the forest during the day but wait until later at night to retrieve it. Frequently those people are found to have removed that firewood from the forest without *427 having a permit or other authority to transport the wood.[2] Because defendant did not appear to have a permit posted on the firewood in the manner Childers associated with the lawful transport of forest products, Childers believed that he had reasonable suspicion to stop defendant's truck to investigate whether he had violated ORS 164.813(3).
Defendant was the driver and sole occupant of the truck. When Childers asked defendant about the wood in the back of his truck, defendant acknowledged that he had taken it from the forest. When asked whether he had a permit for the firewood, defendant said that he did, but that he had left the permit at home. After obtaining those responses, Childers ran a background check on defendant and discovered that he had been driving with a suspended license. As a result, Childers cited defendant both for driving while suspended and unlawfully transporting special forest products.
Before his trial on the unlawful transport charge, defendant moved to suppress the evidence obtained as a result of the stop, *433 arguing that Childers had lacked reasonable suspicion to justify stopping him. During the suppression hearing, the trial court asked Childers whether he had been able to tell what kind of wood defendant had been hauling. As Childers began responding that it had not been juniper or tamarack, defendant interjected to say that it had been fir. Childers agreed, saying, "Yeah, I was going to say fir. It was good fir, not yellow fir."
The trial court ultimately denied defendant's motion to suppress. The court explained:
"In this case, it was 2 o'clock at night. The officer, with the help of the defendant, identified the wood as fir and indicated that that's what you get in the forest. So I'm going to deny the motion to suppress. I think he had reasonable suspicion to stop the vehicle. I think it was objectively reasonable."
A jury subsequently found defendant guilty, and the court entered a judgment of conviction. Defendant appeals.
*428 As he did at the suppression hearing, defendant argues on appeal that Childers did not reasonably suspect that defendant had committed or was about to commit any specific crime. The stop, defendant argues, therefore violated Article I, section 9, of the Oregon Constitution. More specifically, defendant argues that Childers lacked a reasonable basis to suspect that he was transporting the firewood without a permit in violation of ORS 164.813(3). According to defendant, the text and context of that statute indicate that a permit is required only if "a person transports firewood directly away from a harvest or collection site and the person does not own the land from which the wood was harvested and removed." Thus, to reasonably suspect a violation of that statute, an officer must be aware of specific and articulable facts connecting the wood being transported with such a location and supporting an inference that the wood is being transported directly away from that site. In defendant's view, Childers's testimony supported neither belief, and, therefore, the trial court erred in concluding that Childers had had reasonable suspicion to detain him.
In response, the state argues that the trial court properly concluded that reasonable suspicion supported the stop. More specifically, the observations Childers described-the time of night, the type of wood, and the absence of a visible permit-were sufficient to render his suspicion that defendant was violating ORS 164.813(3) objectively reasonable.
Under Article I, section 9, an officer may stop a person to make a reasonable inquiry if the officer reasonably suspects that the person has committed or is about to commit a crime. Maciel-Figueroa , 361 Or. at 171-72, 389 P.3d 1121 (recognizing that the standards for reasonable suspicion under ORS 131.615 and ORS 131.605 inform Article I, section 9, analysis). "Reasonably suspects" means "a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts ***." ORS 131.605(4). Put differently,
"the established standard for reasonable suspicion supporting an investigatory stop of a defendant is met when an officer can point to specific and articulable facts that give rise *429 to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime."
Maciel-Figueroa , 361 Or. at 165, 389 P.3d 1121. The articulated facts need not support certainty that a suspect is engaged in criminal activity; rather, based on those specific facts, "a reviewing court must [be able to] conclude that the officer's subjective belief could be true, as a matter of logic." Id. at 184, 389 P.3d 1121 (emphasis in original).
To determine whether Childers reasonably suspected defendant of violating ORS 164.813(3), we must first determine what that statute requires. Specifically, we must construe the meaning of "transport" under that statute, applying the principles set out in State v. Gaines , 346 Or. 160, 206 P.3d 1042 (2009), and PGE v. Bureau of Labor and Industries , 317 Or. 606, 859 P.2d 1143 (1993). See State v. Lively , 294 Or. App. 377, 380, 430 P.3d 1120 (2018) (analyzing the meaning of "remove" under ORS 164.813 by applying Gaines and PGE ). That is, we first consider the text of the statute in context; then, to the extent that we might find it helpful, we may *434 consider any relevant legislative history that the parties provide or that we discover ourselves. Gaines , 346 Or. at 171-72, 206 P.3d 1042.
The special forest products statute, ORS 164.813, makes certain conduct illegal if the person engaging in that conduct does not possess a permit. The subsection under which defendant was cited provides, in relevant part:
"[I]t is unlawful for a person to transport special forest products without possessing a permit *** or a document of sale showing title to the special forest products."
ORS 164.813(3). The statute also provides a number of definitions. For example, ORS 164.813(1)(b) defines "Special forest products" as including "Firewood[.]" Pertinent to our discussion, ORS 164.813(1)(d) defines "Transportation," in part, as
"the physical conveyance of special forest products away from a harvest or collection site and includes, but is not limited to, transportation in or on *** [a] motor vehicle[.]"
*430 Defendant asserts, based on that statutory text, that a permit is required only when a person is moving special forest products directly away from a harvest or collection site, rather than at any time a person moves those products from one place to another. Thus, for an officer to reasonably suspect a violation of the statute, the officer must be aware of specific and articulable facts (1) connecting a load of wood to a harvest or collection site for which a permit is required and (2) indicating that the person is hauling that load directly away from such a site.
The plain text of ORS 164.813 supports defendant's interpretation, and nothing about the statute's context suggests otherwise. That is, the statutory definition of "transportation" in ORS 164.813(1)(d) does not refer to all conveyances of special forest products, but only "the physical conveyance of special forest products away from a harvest or collection site [.]" (Emphasis added.) To be sure, "harvest" is defined rather broadly and is not expressly limited to gathering forest products from a forest.[3] Furthermore, the permit required under ORS 164.813(3) must include a "description of the premises from which the special forest products were taken," which, in appropriate instances, may be the street address of a "woodlot or fuel dealer or dealer in other special forest products." ORS 164.813(3)(e). However, the apparent purpose of the permit requirement is to ensure that special forest products are not removed from their location without authorization from the owner of the products or the premises from which they are removed. See ORS 164.813(2) (prohibiting the harvest or removal of "special forest products from a place unless the person has in possession a written permit to do so from the owner of the land from which the wood is cut or the special forest products taken"). Thus, the most natural understanding of ORS 164.813(3) is that it requires a permit to convey special wood products away from their owner's premises, but not from a place other than the location from which they were acquired.
*431 We have not been made aware of any legislative history suggesting an alternative understanding of the statute, nor, at least for purposes of this appeal, does the state advocate for an alternative understanding. Rather, the state suggests to us-as it explicitly argued to the trial court-that, under ORS 164.813, a permittee must visibly display, rather than merely possess, the required permit. The state does not, however, develop that argument or identify any source of law for that proposition-indeed, the only expressly applicable laws suggest that no such requirement exists. See, e.g. , ORS 164.813(3) (it is "unlawful for a person to transport special forest products without possessing a permit" (emphasis added)); OAR 629-028-0025(1) (the "[p]ermittee shall have the permit in possession when cutting or removing firewood" (emphasis added)). Accordingly, we do not further consider Childers's stated belief that ORS 164.813 requires a person *435 transporting special forest products to visibly display a permit.[4]
Thus, in determining whether the trial court erred in concluding that Childers reasonably suspected that defendant had violated ORS 164.813(3), we must determine whether the specific and articulable facts known to Childers gave rise to a reasonable inference that defendant was transporting the firewood "away from a harvest or collection site." In denying defendant's motion to suppress, the trial court did not consider that precise question. Rather, the court determined, based, in part, on the following express findings of fact, that Childers had reasonably suspected a violation of the statute: (1) the encounter occurred at 2:00 a.m.; (2) the wood defendant was transporting was fir; and (3) fir is "what you get" in the forest. We are bound by those findings so long as there is constitutionally sufficient evidence in the record to support them. Maciel-Figueroa , 361 Or. at 165-66, 389 P.3d 1121. And, at least as to the time of the stop and the type of wood defendant was hauling, we conclude that the record supports the trial court's findings. That is, Childers testified *432 to the time at which he had encountered defendant, and, although his testimony on the point was aided by defendant, Childers ultimately identified the wood defendant had been hauling as fir.[5] The state presented no evidence, however, that fir is "what you get" in the forest. Contrary to the trial court's recitation of the evidence, Childers did not testify to that fact at the suppression hearing, nor has the state identified any other evidence in the record supporting that inference or suggesting that Childers would have been aware of that fact as a matter of common knowledge. Thus, to the extent that the ostensible association of fir and forests might otherwise have suggested that defendant was transporting wood from a harvest or collection site, i.e. , a site for which a removal permit would be required, the court erred in relying on that fact in assessing whether Childers had reasonable suspicion.
That leaves us with the question whether the trial court's other express findings, together with the other evidence in the record, support the conclusion that Childers reasonably suspected that defendant was unlawfully transporting special forest products in violation of ORS 164.813(3). As they did at the suppression hearing, both parties focus their arguments on our decision in State v. Crites , 151 Or. App. 313, 948 P.2d 757 (1997), rev. den. , 327 Or. 82, 961 P.2d 216 (1998), a case that, like this one, involved the investigatory stop of a driver under the unlawful transport of special forest products statute. We turn to that decision.
In Crites , an officer stopped the defendant's vehicle after observing him hauling what appeared to be cedar products after dark. Id. at 315, 948 P.2d 757. At the time of the stop, the *433 officer was aware of a large cedar theft problem in the immediate area, which consisted mostly of state forest land. Id . The officer also knew that the State Forestry Department did not issue permits to harvest cedar. Id. Thus, unlike the officer in this case, that officer did not merely see the defendant transporting wood after dark and draw the inference that he was doing so without a required permit. The officer in Crites also recognized the wood being transported as cedar, which he knew to be the subject of a significant theft problem in the area, and knew that most of the cedar in the *436 immediate area was on state-owned land, for which the defendant could not have had a permit. Id . Viewed in light of the officer's training and experience, those facts supported the reasonable inference that the defendant was transporting the wood from a nearby harvest or collection site without the required permit to do so. Id . at 316, 948 P.2d 757.
Here, on the other hand, even when viewed in light of Childers's training and experience, the specific and articulable facts known to him could not support a nonspeculative inference that defendant was transporting wood in violation of ORS 164.813(3). That is, like the officer in Crites , Childers saw defendant hauling a specific type of wood-fir-well after dark without a visible permit to do so. However, no other facts articulated by Childers and specific to defendant suggested that he was engaged in the unlawful transport of special forest products. Although Childers evidently recognized the type of wood in the back of defendant's truck to be fir, no evidence presented at the suppression hearing suggested that defendant was conveying the fir from a nearby forest such that a permit would be required, that fir was a common subject of theft (and so commonly transported without a permit), or that it was likely to have come from a harvest or collection site from which no permit would have been available. And, although Childers testified that, in his training and experience, individuals who remove wood from forests without the required permits often do so at night, nothing about that knowledge was specific to defendant or otherwise suggested that he was engaged in that activity. Rather, the only specific information Childers knew about defendant was that he was conveying firewood in the early morning hours, a practice Childers evidently knew *434 to be common among wood thieves. And while that information may have contributed to reasonable suspicion that defendant was hauling the wood without a required permit, in our view, that information standing alone gave rise to nothing more than a mere speculation that defendant was unlawfully transporting special forest products. The trial court therefore erred in denying defendant's motion to suppress based on its determination that Childers had reasonable suspicion to support his investigatory stop of defendant.
Reversed and remanded.

ORS 164.813(3) provides, in relevant part:
"Subject to subsection (6) of this section, it is unlawful for a person to transport special forest products without possessing a permit as described in subsection (2) of this section or a document of sale showing title to the special forest products."
Additional provisions of ORS 164.813 are set out and discussed below. 296 Or. App. at 429-30, 431 P.3d at 434.

As noted, under ORS 164.813(3), a person subject to the requirements of that statute must either possess a permit "or a document of sale showing title to the special forest products." For ease of discussion, we refer to both qualifying documents simply as "permits."

ORS 164.813(1)(a) defines "Harvest" as "to separate by cutting, digging, prying, picking, peeling, breaking, pulling, splitting or otherwise removing a special forest product from: (A) Its physical connection or point of contact with the ground or vegetation upon which it was growing; or (B) The place or position where it lay." The statute does not define "collection."

The state does not argue that, even if defendant was not required to visibly display a permit, his failure to do so nonetheless supported reasonable suspicion that he was otherwise violating ORS 164.813, such as by not having the required permit in his possession while transporting special forest products. Thus, we do not attach any significance to the fact that defendant did not visibly display a permit.

After Childers testified at the suppression hearing, the trial court asked him whether he could "tell what kind of wood it was based on following it?" Then the following exchange took place:
"[Childers]: You know, it wasn't-it wasn't juniper or tamarack wood. It looked like it was-
"[Defendant]: Fir.
"[Childers]: Yeah, I was going to say fir. It was good fir, not yellow fir."
Although it is somewhat unclear from that exchange whether Childers intended to convey to the court that he had known that the wood was fir before the stop, defendant does not contend that there is insufficient evidence in the record to support the court's apparent finding to that effect.