POWERS, J.
*342 In this consolidated criminal appeal, defendant seeks reversal of his conviction for driving while suspended, ORS 811.182, and the imposition of a $100 traffic fine under ORS 137.286(1). As a result of the conviction, the trial court also found defendant in violation of the terms of his probation relating to an unrelated, prior conviction. Consequently, defendant also seeks reversal of the judgment of the probation violation. On appeal, defendant advances two assignments of error: (1) the trial court erred in denying the motion to suppress evidence of his suspended license; and (2) the trial court erred in applying ORS 137.286(1) by imposing a $100 traffic fine in addition to a $1,000 conviction fee. The state argues that the trial court did not err in denying defendant's motion to suppress but concedes that the trial court erred in imposing a $100 fine. As explained below, we agree with defendant that the facts articulated by the deputy do not establish reasonable suspicion that defendant had committed or was about to commit a crime. Thus, the trial court erred in denying defendant's motion to suppress. Given our disposition of defendant's first assignment of error, we need not address defendant's second assignment of error. Accordingly, we reverse and remand to the trial court both the judgment of conviction and the judgment finding defendant in violation of his probation.
We review the denial of defendant's motion to suppress evidence for legal error *897 and, in so doing, we are "bound by the trial court's findings of fact if they are supported by the record." State v. Baker , 350 Or. 641, 650, 260 P.3d 476 (2011). If the trial court did not make explicit findings on facts that could be decided more than one way based on the evidence in the record, then we will infer that the court found those facts consistent with the trial court's ultimate conclusion. Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968). We describe the facts in a manner consistent with those standards.
As part of his routine during a shift, Deputy Prince of the Washington County Sheriff's Office drives by a Goodwill donation trailer located in a secluded, back area of a church parking lot because there have been problems with *343 theft and illegal dumping in the past. Signs posted near the donation trailer indicate that it is unlawful to drop off items after hours. The church is located in a residential neighborhood and there are no other businesses nearby. Prince testified that, if he sees someone near the trailer, he contacts them. He testified that he regularly finds items that have been illegally dumped or taken from the site, and that he has caught approximately five or six people for theft or illegal dumping in the past six years.
At approximately 12:40 a.m. on the night defendant was stopped, Prince contacted an unrelated individual that had dumped some baggage at the trailer after hours. Prince gave that individual a warning and told him to leave. Within minutes after Prince left the parking lot, he remembered that individuals in the past had cut the lock on the trailer during theft attempts, so he decided to turn around to make sure that the trailer lock was not cut.
As Prince drove back to the church, he saw a vehicle in the parking lot about 10 to 15 feet away from the donation trailer with its headlights on facing the trailer. Prince quickly turned into the parking lot and pulled up right behind the vehicle. As he approached, he saw defendant, empty-handed, "moving in a hurried fashion" from the fence line behind the trailer toward the vehicle. Defendant then got in the driver's seat and sat down. Prince activated his overhead lights because "it looked like he was trying to leave." Prince suspected that the crime of offensive littering or theft had occurred. According to Prince, he believed that he had reasonable suspicion:
"I've dealt with thefts before at that trailer. It's clearly posted that you cannot-that you can't dump anything there overnight. I'm sorry, the thefts and the dumping that I've dealt with before, the posting on the trailer there, the fact that [defendant] was there, and nobody is ever there in that area, the fact that he was hurriedly going back to his car at that point."
Following the stop and a brief discussion with defendant, Prince ran defendant's information and discovered that his license was suspended. Defendant was charged with driving while suspended, ORS 811.182.
*344 Before trial, defendant filed a motion to suppress and argued that the circumstances of this case were insufficient to establish that Prince had reasonable suspicion to believe that defendant had committed or was about to commit a crime. Conversely, the state argued that, under the totality of the circumstances, Prince's suspicion that defendant committed or was about to commit theft or offensive littering was objectively reasonable.
The trial court denied defendant's motion to suppress, concluding that Prince had reasonable suspicion for the stop. The trial court reasoned that, in light of other explanations for defendant's presence at the trailer being implausible, e.g. relieving himself or parking to make a phone call, Prince made a "reasonable conclusion" based on his "instincts that [defendant was] either dropping something off he shouldn't, or he's taking something that doesn't belong to him."
Following the trial court's denial of defendant's motion to suppress, defendant waived his right to a jury, proceeded to trial, and the court convicted defendant of driving while suspended. In addition to entering the judgment of conviction, the trial court entered a separate judgment finding defendant to be in violation of the terms of his probation based on the new conviction. The trial court later entered an amended judgment for the driving while suspended conviction, assessing a $100 traffic fine in addition to a $1,000 conviction fee.
*898 On appeal, defendant seeks reversal of both the amended judgment of conviction and the judgment finding defendant in violation of his probation. In his first assignment of error, defendant reprises his arguments from the motion to suppress. Defendant argues that his presence in a particular area known for criminal activity, without more evidence suggesting that he was engaged in criminal conduct, is insufficient to establish reasonable suspicion of theft or offensive littering. The state remonstrates that the deputy had reasonable suspicion that defendant was committing, or was about to commit, theft or offensive littering by listing a number of factors including the time of the stop, *345 the location of the stop, and defendant's hurried motion back to his vehicle.
As explained below, we conclude that, under the totality of the circumstances, the facts articulated by Prince are not sufficient to support reasonable suspicion that defendant was engaged in theft or offensive littering at the time Prince stopped defendant.
Article I, section 9, of the Oregon Constitution protects individuals against unreasonable searches and seizures. For purposes of Article I, section 9, a stop is a seizure and it must be supported by reasonable suspicion of criminal activity. State v. Rodgers/Kirkeby , 347 Or. 610, 621, 227 P.3d 695 (2010). A stop is supported by reasonable suspicion when an officer "actually suspect[s] that the stopped person ha[s] committed a specific crime or type of crime, or was about to commit a specific crime or type of crime," and based on the record, the officer's "subjective belief * * * was objectively reasonable under the totality of the circumstances existing at the time of the stop." State v. Maciel-Figueroa , 361 Or. 163, 182, 389 P.3d 1121 (2017). An officer's subjective belief is objectively reasonable when the officer can point to specific and articulable facts that support a reasonable inference that the defendant has committed or is about to commit the crime that the officer suspects. Id. at 184, 389 P.3d 1121 ; State v. Holdorf , 355 Or. 812, 825, 333 P.3d 982 (2014). Reasonable suspicion does not require that the articulated facts "conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person." State v. Hiner , 240 Or. App. 175, 181, 246 P.3d 35 (2010).
The parties agree that Prince stopped defendant the moment Prince turned on his overhead lights behind defendant's vehicle. The parties further agree that Prince held a subjective belief that defendant had committed or was about to commit a crime. Thus, the central question before us is whether Prince's belief was objectively reasonable, viz. , whether Prince provided specific and articulable facts to support an inference that defendant committed or was about to commit theft or offensive littering.
*346 Whether an officer's suspicion is objectively reasonable "depend[s] on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience." State v. Ehly , 317 Or. 66, 80, 854 P.2d 421 (1993). However, "[o]fficer intuition and experience alone are not sufficient." Holdorf , 355 Or. at 823, 333 P.3d 982. Importantly, an officer's suspicion "must be particularized to the individual based on the individual's own conduct." State v. Miglavs , 337 Or. 1, 12, 90 P.3d 607 (2004). Moreover, "an officer may not stop a person simply because the person's conduct is consistent with criminal conduct; the nature of the conduct matters." State v. Martin , 260 Or. App. 461, 469-70, 317 P.3d 408 (2014).
Prince articulated several facts regarding his suspicion at the time of the stop: the secluded location of the donation trailer; the time of the encounter and lack of businesses nearby; his experience with theft and illegal dumping at the trailer, including his encounter earlier that night; and defendant moving quickly from the fence to his vehicle when Prince pulled into the parking lot. Taken together, those facts do not support reasonable suspicion of criminal activity; rather, they amount to a generalized suspicion that is not "particularized to [defendant] based on [defendant's] own conduct." Miglavs , 337 Or. at 12, 90 P.3d 607.
The state's argument primarily relies on the location of the trailer and the fact that the encounter took place at night when *899 no one would be in the parking lot. Those facts, however, add little to the analysis given that "mere presence" in a high-crime area is insufficient to establish reasonable suspicion of criminal activity. State v. Acuna , 264 Or. App. 158, 168, 331 P.3d 1040, rev. den. , 356 Or. 400, 339 P.3d 440 (2014). In this case, of course, there is more than just "mere presence" because the deputy testified to defendant's conduct-moving to his vehicle in a hurried fashion-and we must add that to the reasonable suspicion calculus. The nature of that conduct, however, even in light of the other articulated circumstances, does not support a reasonable inference that defendant was engaged in criminal activity. Defendant's presence in an area known for theft or offensive littering combined with his quick entry into his vehicle is not inherently suggestive of the commission of a crime or an *347 intent to commit a crime, let alone a specific crime or type of crime.
Moreover, Prince's experience of prior criminal activity at the donation trailer cannot serve as a basis for reasonable suspicion that a quick-moving individual is engaged in the same conduct sufficient to support a stop. See State v. Greer , 93 Or. App. 409, 412-13, 763 P.2d 158 (1988) (holding that the officer did not have reasonable suspicion of burglary when defendants were sitting in a vehicle at 3:00 a.m. next to a drive-thru window notwithstanding the officer's experience that drive-thru windows had been used as points of entry for burglaries at fast-food restaurants). This conclusion does not suggest that the deputy must stand idly by; rather, he could have engaged in mere conversation or continued observing defendant's conduct. See State v. Messer , 71 Or. App. 506, 510, 692 P.2d 713 (1984) (stating that, because the officer did not have reasonable suspicion of burglary to stop defendant who was sitting in his vehicle outside a retail store at 3:45 a.m., the officer's choices were to engage in mere conversation or leave).
In short, we conclude that, because defendant was stopped when Prince activated the overhead lights of his patrol car, and because the stop was not supported by reasonable suspicion that defendant was engaged in criminal activity, the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand both the judgment of conviction and the judgment finding defendant in violation of his probation.
Reversed and remanded.