Argued and submitted September 24, affirmed December 30, 2020, petition for review denied April 8, 2021 (367 Or 827)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JODI MICHELLE ROBERTS,
*Defendant-Appellant.*

Washington County Circuit Court
18CR64689; A170270

480 P3d 1016

A witness observed a shoplifting suspect have a "slight conversation" with people in defendant's vehicle as the suspect fled the store immediately following the theft. Based on that information and her experience as an officer that shoplifters often work in teams, the responding officer suspected defendant was involved in the theft and stopped her vehicle. Defendant consented to a search, resulting in the discovery of methamphetamine. At trial, defendant moved to suppress that evidence, but the trial court denied the motion and defendant was convicted of unlawful possession of methamphetamine. Appealing that judgment, defendant assigns error to the trial court's denial of her motion to suppress. She argues that the stop violated Article I, section 9, of the Oregon Constitution, because it was not supported by objectively reasonable suspicion that defendant had committed any crime related to the theft. *Held*: The trial court did not err in denying defendant's motion to suppress because the officer had reasonable suspicion that defendant was involved in the theft.

Affirmed.

Ricardo J. Menchaca, Judge.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Daniel Norris, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for unlawful possession of a useable quantity of methamphetamine, ORS 475.894(2)(a). She assigns error to the trial court's denial of her motion to suppress evidence obtained after her car was stopped by police on suspicion of involvement in a theft of merchandise from a nearby Home Depot. Subsequent to the stop, defendant consented to a search of her car, where methamphetamine was found. Defendant argues that the stop violated Article I, section 9, of the Oregon Constitution, because it was not supported by objectively reasonable suspicion that defendant had committed a specific crime or type of crime. Defendant contends that her consent was the product of an unlawful stop. We conclude that the trial court did not err in denying defendant's suppression motion. Therefore, we affirm.

We review the trial court's ruling denying defendant's motion to suppress for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). We are bound by the court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Where the court did not make express findings, and there is evidence from which the court could have found a fact in more than one way, we presume that the court decided the facts consistently with its ultimate conclusion. *Id*. We summarize the facts in accordance with those standards.

On September 22, 2018, at approximately 5:50 p.m., Officer Bobier responded to a call of a "Theft In Progress" at a Home Depot. Over her police radio, Bobier heard a report from dispatch that a female suspect with "curly brown hair" wearing an orange shirt had taken power tools from the Home Depot. As the suspect ran from the store, a witness observed her "stop[] and [make] contact in the parking lot with a white Dodge Intrepid" that was marked in the back with a temporary trip permit. The witness reported that the vehicle was occupied by one male and one female, and that the suspect had a "slight conversation" with the occupants. It was unknown if the female theft suspect had either passed items to the vehicle's occupants or gotten into the vehicle

herself. However, Bobier understood that "[the theft suspect] was last seen having a conversation with the people in this vehicle." The vehicle was then seen heading westbound on TV Highway.[1]

As Bobier looked for the white Intrepid, Officer Voth also made his way to the area. Although Bobier was only receiving information via her police radio, Voth was also reading the written dispatch notes as they appeared in his computer system. Voth understood that the loss prevention officer (LPO) had unsuccessfully tried to stop the suspect, that the suspect was "running towards the Red Robin" across the street, and that a white Dodge was "possibly involved." Voth believed that he was looking for "a vehicle in the area and a female in the area, on foot." Voth knew from past dealings that this LPO would typically follow shoplifters outside and keep them in visual range for as long as possible until police arrived.

Bobier had been in law enforcement for 14 years and had responded to "at least 500 or more" calls involving thefts from stores. Bobier testified that "it's not unusual at all" for retail thefts to involve multiple suspects, and that "it is common" for one person to go inside a store and steal while another person waits outside for them in a getaway vehicle. Bobier testified that it was typical in her experience that, if an LPO attempted to stop a shoplifter, the shoplifter might try to get rid of the stolen merchandise. Voth testified that, in his experience, that happens about 50 percent of the time, particularly in cases where a shoplifter believes they are about to be successfully stopped by an LPO.

Within about five to 10 minutes of hearing the report over the radio, Bobier located a white Dodge Intrepid with a trip permit in the back, occupied by one male and one

_____

[1] Bobier understood the reporting party to be a particular loss prevention officer (LPO) at that Home Depot store with whom she had some familiarity. In fact, the LPO did not have personal knowledge of all the facts relayed—an unnamed independent witness had observed the interaction with the Intrepid in the parking lot. At the time Bobier executed the stop, she was not aware that the report included observations from multiple parties. Defendant argued at length in the trial court that the unnamed witness's report should not be treated as reliable for purposes of the court's reasonable suspicion analysis. However, she does not repeat those arguments on appeal.

female, headed westbound on TV Highway as the reporting party had described. The vehicle was "within a quarter mile" of the Home Depot. Bobier initiated a stop. She testified that she did so because she

> "believed that [the vehicle] was possibly involved with the theft that had just occurred from the Home Depot, based upon the description of the car, the occupants that were in the vehicle. And that it was reported that the suspect had approached that vehicle and it was unknown if she entered it. And I believed that there was possibly an exchange of stolen items and that the stolen items possibly were in that car."

Defendant was the driver of that car. Bobier testified that, upon approaching the car, she did not see the theft suspect in the vehicle. She did not see any Home Depot bags either, although she could not see under the seats or in the trunk. Approximately 20 to 30 seconds after Bobier initiated the stop, Voth arrived on the scene. Voth spoke with the backseat passenger while Bobier questioned defendant. Voth noted that the single passenger in the car was sitting directly behind the driver, rather than in the front passenger seat, a seating arrangement he considered "unusual" and which led him to believe that "there [were] people that weren't present in the car and, hence, we were still looking for a couple of people." Bobier asked defendant to step out of the vehicle, read defendant her *Miranda* rights, and questioned her about the theft incident. Defendant admitted to knowing the theft suspect by first name only and reported that the suspect "walked up to her vehicle and said hi." The male passenger admitted to Voth that the theft suspect was his wife. Bobier asked for defendant's consent to search the car, which was granted. During the search, Bobier located a small bag of methamphetamine and a methamphetamine pipe.[2] Defendant was charged with one count of unlawful possession of methamphetamine—usable quantity, a Class A misdemeanor.[3]

---

[2] No stolen merchandise was discovered in the vehicle. The theft suspect was subsequently apprehended elsewhere with "some" of the merchandise still in her possession.

[3] Defendant was not charged with any crimes related to the theft from Home Depot.

In advance of trial, defendant moved to suppress "the stop * * *, as well as the seizure of any and all evidence obtained as a result therefrom, including all oral derivative evidence." As relevant to this appeal, defendant argued that the mere fact that the theft suspect had "some kind of interaction" with defendant's car was not sufficient to support Bobier's suspicion that defendant committed any crime related to the theft. The state argued that, under the totality of the circumstances, Bobier did have reasonable suspicion that defendant was involved in the theft and may have taken possession of the stolen property or provided transportation to the theft suspect. The trial court denied the motion, concluding that "there was reasonable suspicion and that both officers were able to describe specific articulable facts." The court noted certain specific facts in making its ruling: that a white Dodge Intrepid with a trip permit "was described as possibly being involved" in a theft in progress; that the suspect had made contact with that vehicle; and that "the seating arrangement was unusual" when the officer stopped the car a quarter of a mile from the theft site. Defendant was tried before the court on stipulated facts and convicted of possession of methamphetamine. This timely appeal followed.

Defendant reiterates her argument that the circumstances in this case are not enough to meet the reasonable suspicion standard for the police to stop her car. She posits that her mere association with the theft suspect and their short exchange of words is insufficient to show reasonable suspicion that defendant committed a crime. The state argues that the totality of circumstances in this case is more than a mere association or exchange of words, and that, when the actual totality of circumstances is considered, it was reasonable for Bobier to have suspected that defendant aided and abetted the theft and that defendant's car could contain the merchandise or the suspect.

We turn to the law that applies to Bobier's stop of defendant. Article I, section 9, protects individuals against unreasonable searches and seizures. A stop, or temporary detention for investigatory purposes, is a seizure that must be supported by reasonable suspicion of criminal activity to comply with Article I, section 9. *See Maciel-Figueroa*, 361

Or at 169-70. A stop is supported by reasonable suspicion
when the officer subjectively believes that the person has
committed or is about to commit a specific crime or type of
crime, and that belief is objectively reasonable in light of the
totality of the circumstances existing at the time of the stop.
*Id*. at 182.

Reasonable suspicion must be supported by spe-
cific and articulable facts. *Id*. at 165. The standard does not
require that those facts "conclusively indicate illegal activ-
ity but, rather, only that those facts support the reasonable
inference" that the person committed or was about to com-
mit a specific crime or type of crime. *State v. Semore*, 298
Or App 341, 345, 445 P3d 895 (2019) (citing *State v. Hiner*,
240 Or App 175, 181, 246 P3d 35 (2010)). An officer can draw
on his or her training and experience to make reasonable
inferences under the circumstances, but "training and expe-
rience alone are not an adequate substitute for objectively
observable facts." *State v. Oller*, 277 Or App 529, 534, 371
P3d 1268 (2016), *rev den*, 361 Or 803 (2017). Where "reason-
able suspicion is based upon a chain of interlocking infer-
ences, we assess whether those inferences are individually
and collectively reasonable." *Id*. at 535. The reasonable sus-
picion standard includes "a proper regard for the experience
that police officers bring with them when they encounter
criminal suspects." *State v. Holdorf*, 355 Or 812, 827-28, 333
P3d 982 (2014). Overall, reasonable suspicion "is a relatively
low barrier." *State v. Jones*, 245 Or App 186, 192, 263 P3d
344 (2011), *rev den*, 354 Or 838 (2014).

The state does not dispute that Bobier stopped
defendant when she pulled over the car defendant was driv-
ing. Further, defendant does not dispute that Bobier subjec-
tively believed that defendant was involved in the theft from
the Home Depot. The only issue, then, is whether Bobier's
suspicion was objectively reasonable.

Our task on appeal is to consider (1) the facts that
were known to Bobier at the time that she stopped defen-
dant[4] and (2) whether, as a matter of law, those facts gave

---

[4] In considering the "unusual" seating arrangement inside the Intrepid, the
trial court appears to have considered a fact that Bobier learned after she stopped
the vehicle. However, we do not consider that fact in our analysis because, for

Bobier objectively reasonable suspicion that defendant was aiding and abetting or otherwise involved in a theft. When Bobier stopped defendant, she knew the following facts: (1) that dispatch was reporting a "Theft in Progress" involving a described female suspect who had just stolen power tools from the Home Depot; (2) that a witness had observed the suspect stop in the Home Depot parking lot and exchange words with someone in a vehicle as she left the store; (3) that the vehicle was described as a white Dodge Intrepid with a trip permit and one female and one male occupant, heading west on TV Highway; (4) that a vehicle matching that description exactly was quickly found one-quarter mile away; and (5) that it is common for shoplifters to hand off stolen merchandise to third parties and use getaway cars. We conclude that those facts are sufficient to support Bobier's reasonable suspicion that defendant was involved in the theft from the Home Depot, possibly by receiving the stolen merchandise or acting as a getaway driver for the theft suspect.

We start by considering the most significant articulable fact in this case, that a witness reported to police that they had observed the shoplifting suspect stop and have a "slight conversation" with the occupants of the white Intrepid. Admittedly, the exchange of a few words with a shoplifting suspect is a somewhat innocuous fact on its own, especially when we do not know the content of that conversation, or whether defendant, rather than her passenger, was a party to it. As we have said before, mere association with a person who has committed a crime is not itself sufficient to establish reasonable suspicion. *See, e.g.*, *State v. Kingsmith*, 256 Or App 762, 772, 302 P3d 471 (2013) (summarizing cases). Even if defendant was a party to the conversation, there could be entirely innocent reasons why a person would exchange words with a shoplifting suspect separate from criminal activity or aiding and abetting behavior. However, our standard is a relatively low one.

> "[T]he state need not prove that the articulated facts give rise to a conclusion with certainty that a crime has occurred or is about to occur; instead, based on the specific

purposes of the reasonable suspicion inquiry, we must only consider the facts known to Bobier at the time she developed suspicion and began the stop.

> facts known and articulated by the officer, a reviewing court must conclude that the officer's subjective belief *could* be true, as a matter of logic."

*Maciel-Figueroa*, 361 Or at 184 (emphasis in original). When, as explained below, this "slight conversation" is viewed in context with the surrounding circumstances, that standard is met.

Here, the suspect's brief conversation with the occupants of the car cannot be divorced from two surrounding circumstances. First, and most significantly, the suspect proceeded to talk to the car's occupants as she was actively fleeing the Home Depot during a "Theft In Progress." Second, defendant drove away and left the parking lot soon after that interaction. When these factors are viewed together, through the lens of Bobier's training and experience that shoplifting is often done with the assistance of a getaway car, we conclude that Bobier's subjective belief that the suspect and defendant were working together and that the car could contain the merchandise or the suspect herself meets the low threshold of "*could* be true, as a matter of logic," and is therefore objectively reasonable. First, it was reasonable for Bobier to infer that the suspect's interaction with defendant's vehicle was likely not a casual encounter. Considering the circumstances known to Bobier that the suspect had made a quick departure from the store mere moments before, it is reasonable to infer that a suspect in that position would want to make a quick getaway or at least separate herself from evidence of her crime. At a minimum, the officer had a reasonable suspicion that the suspect and the occupants of the vehicle may have been working together. Second, the fact that the Intrepid left the Home Depot parking lot following the interaction further supports the inference that the suspect and the occupants of the vehicle may have been working together. While defendant is correct in pointing out that no one could say how quickly the Intrepid drove away, the record does establish that the car was located one-quarter mile away within five to 10 minutes of dispatch first receiving and broadcasting the theft report. That information allows a reasonable inference that the car started driving away soon after the interaction. Although defendant's departure from the parking lot at that

time could have been coincidental, the reasonable suspicion standard does not require that an officer forgo a stop because there may be alternative, innocent explanations for suspicious activity. "The possibility that there may be a non-criminal explanation for the facts observed or that the officer's suspicion will turn out to be wrong does not defeat the reasonableness of the suspicion." *State v. Braukman*, 246 Or App 123, 127, 265 P3d 28 (2011), *rev den*, 351 Or 675 (2012) (citing *State v. Kolendar*, 100 Or App 319, 323, 786 P2d 199, *rev den*, 309 Or 698 (1990)). Considering the above facts known to Bobier and the reasonable inferences drawn from those facts, Bobier had at least a reasonable suspicion that the occupants of the car were working with the suspect to aid and abet the theft, or were otherwise involved in the theft from the Home Depot, and that she may find either the suspect or the stolen merchandise in the car.

Referring to *State v. Fuller*, 296 Or App 425, 438 P3d 431 (2019), defendant argues, as we understand it, that the trial court improperly used Bobier's knowledge that shoplifters work in teams, as supplied by her training and experience, as a replacement for specific and articulable facts that defendant in particular committed a specific crime. We do not agree.

In *Fuller*, the officer observed a truck driving with a bed full of cut wood rounds at 2:15 a.m., with no permit or tag visible on the load. *Id*. at 426. The officer believed, based on his training and experience, that individuals who remove firewood from the forest illegally are likely to cut the wood during the day but drive it out of the forest at night to avoid detection. *Id*. at 426-27. Based on a mistaken understanding of the permit tag requirements, the officer executed a stop. *Id*. at 427. We concluded that the specific and articulable facts that the officer observed "could not support a nonspeculative inference that defendant was transporting wood in violation of [Oregon law]." *Id*. at 433. We explained:

> "[A]lthough Childers testified that, in his training and experience, individuals who remove wood from forests without the required permits often do so at night, nothing about that knowledge was specific to defendant or otherwise suggested that he was engaged in that activity. Rather, the only specific information Childers knew about defendant

was that he was conveying firewood in the early morning hours, a practice Childers evidently knew to be common among wood thieves. And while that information may have *contributed* to reasonable suspicion that defendant was hauling the wood without a required permit, in our view, that information standing alone gave rise to nothing more than a mere speculation that defendant was unlawfully transporting special forest products."

*Id*. at 433-34 (emphasis in original).

The case before us is distinguishable from *Fuller*. In *Fuller*, the defendant's behavior was objectively innocuous when not viewed through the lens of the officer's experience regarding illegal wood harvesting practices. Specifically, when the officer's experience was left out of the analysis, the defendant's actions—driving at night with a truck full of wood—did not imply any sort of criminal activity. Thus, we concluded in *Fuller* that the officer's suspicion was "mere speculation." Here, in contrast, defendant's (or her passenger's) brief conversation with an actively fleeing theft suspect, and defendant's subsequent departure from the parking lot, are at least notable, even without the added context that shoplifters often work in teams. "Officer experience might explain legal but otherwise suspicious behavior to place it in context for the factfinder, but it cannot be a substitute for specific and articulable facts." *State v. Aguilar*, 307 Or App 457, 470, 478 P3d 558 (2020). In this case, Bobier pointed to specific and articulable facts that defendant or her passenger had exchanged words with a fleeing theft suspect, and that defendant then drove away. Bobier's experience helps explain this "legal but otherwise suspicious behavior."

In sum, we reject defendant's challenge to the trial court's denial of her motion to suppress evidence. The trial court did not err in denying defendant's motion to suppress because the officer had reasonable suspicion that defendant was involved in the theft. Accordingly, we affirm.

Affirmed.